Young, J.
i. introduction
In these consolidated premises liability cases, plaintiffs seek to recover for injuries they suffered when fellow concertgoers at the Pine Knob Music Theater (Pine Knob), an outdoor amphitheater that offered seating on a grass-covered hill, began pulling .up and throwing pieces of sod. We granted leave to address the duty of premises owners concerning the criminal acts of third parties.
Under Mason v Royal Dequindre, Inc, 455 Mich 391; 566 NW2d 199 (1997), merchants have a duty to respond reasonably to situations occurring on the premises that pose a risk of imminent and foresee *326 able harm to identifiable invitees. We hold today that the duty to respond is limited to reasonably expediting the involvement of the police and that there is no duty to otherwise anticipate and prevent the criminal acts of third parties. Finally, consistent with Williams v Cunningham Drug Stores, Inc, 429 Mich 495; 418 NW2d 381 (1988), and Scott v Harper Recreation, Inc, 444 Mich 441; 506 NW2d 857 (1993), we reaffirm that merchants are not required to provide security personnel or otherwise resort to self-help in order to deter or quell such occurrences.
H. FACTUAL AND PROCEDURAL BACKGROUND
a. Macdonald
In MacDonald, plaintiff Molly MacDonald attended a concert on May 4, 1995, at Pine Knob at which several bands were performing. Pine Knob offers seating on a grass-covered hill, as well as seating in a pavilion. Plaintiff received the tickets to the concert as part of a promotional giveaway by a local radio station sponsoring the concert. When plaintiff arrived at Pine Knob, she and a friend found a spot to sit on the hill. While a band called Bush was performing, some patrons began pulling up sod and throwing it.
Before the concert, the event coordinator had asked the bands to stop performing in the event that the audience members began throwing sod, and announce that the sod throwing must stop. There were also flyers posted in the dressing rooms of the bands requesting the bands to make an announcement to the audience to stop throwing sod. Pursuant to that request, the band finished the song and stopped performing, making an announcement that *327 unless the sod throwing stopped, the concert would not continue. The crowd complied with the band’s request, and several individuals were ejected from Pine Knob for throwing sod.
While the next band, the Ramones, was performing, the sod throwing resumed. After that band refused to make an announcement to stop throwing sod, the event coordinator turned on the house lights. When the sod throwing continued, the band made an additional announcement demanding that it stop. Once again, several individuals who were involved in throwing sod were ejected from the theater. During the second incident of sod throwing, plaintiff fractured her ankle when she fell while attempting to avoid being struck by a piece of sod. Discovery materials indicated that there had been two sod-throwing incidents at previous concerts at Pine Knob, one incident in 1991, at a Lollapalooza concert, and another incident in 1994, at a Metallica concert.[1]
Plaintiff filed a complaint against, among others, PKT, Inc., also known as Pine Knob Music Theater and Arena Associates.[2] Plaintiff alleged that Pine Knob was negligent in failing to provide proper security, failing to stop the performance when it should have known that continuing the performance would incite the crowd, failing to screen the crowd to eliminate intoxicated individuals, and by selling alcoholic beverages. Pine Knob moved for summary disposi *328 tion, arguing that it did not have a duty to protect plaintiff from the criminal acts of third parties. Meanwhile, plaintiff moved to amend her complaint to add certain theories including design defect, nuisance, and third-party beneficiary claims and to more specifically set forth her negligence claim.
The trial court granted summary disposition for Pine Knob pursuant to MCR 2.116(C)(8) and (10), but the Court of Appeals reversed.[3] The Court of Appeals held that the trial court erred in granting summary disposition in favor of Pine Knob because there were fact questions for the jury regarding whether the sod-throwing incident created a foreseeable risk of harm and whether the security measures taken by Pine Knob were reasonable. The Court of Appeals reasoned that plaintiff submitted evidence that there had been incidents of sod-throwing at previous concerts, that Pine Knob was aware of those instances, and that it had formulated policies to deal with sod throwing incidents before the concert. Regarding the question whether security measures taken by Pine Knob were reasonable, the Court of Appeals stated that plaintiff presented evidence sufficient to survive summary disposition by submitting the affidavit of an expert witness who stated that Pine Knob was negligent by (1) failing to have adequately trained security personnel properly positioned at the concert,[4] (2) failing to summon the police to eject or arrest those throwing sod, (3) failing to have a clear, written policy regarding the sod throwing, (4) allowing the con *329 cert to continue after the first incident, and (5) serving alcohol.
Finally, the Court of Appeals held that the trial court abused its discretion in denying plaintiff’s motion to amend her complaint pursuant to MCR 2.116(I)(5). The Court of Appeals stated that the proposed claims were legally sufficient and were justified by the evidence. This Court granted Pine Knob’s application for leave to appeal.[5]
B. LOWRY
In Lowry, plaintiff and a friend attended a Suicidal Tendencies/Danzig/Metallica concert at Pine Knob on June 22, 1994. Plaintiff suffers from multiple sclerosis and uses the aid of two canes or a wheelchair. Plaintiff was seated in the handicapped section at Pine Knob, which is located at the rear of the pavilion immediately adjacent to the grass seating. During the performance of Danzig, patrons seated on the lawn of Pine Knob began throwing sod. Plaintiff was allegedly struck with sod on the head and shoulders. Within a few minutes, the band stopped performing and an announcement was made requiring individuals to stop or the concert would not continue. Alcohol sales were cut off. Deposition testimony indicated that the sod throwing stopped within ten to fifteen minutes and numerous individuals were ejected from Pine Knob.[6]
Plaintiff brought a negligence action against Pine Knob, as well as Cellar Door Productions of Michi *330 gan, Inc., the producer of the concert, alleging that defendants failed to protect plaintiff from the foreseeable dangers of sod throwing by patrons. Plaintiff also alleged that defendants violated his rights under the Michigan Handicappers’ Civil Rights Act (mhcra), (now: Persons With Disabilities Civil Rights Act), MCL 37.1101 el seq., by failing to adequately accommodate his disability.
Defendants moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that they owed no duty to protect plaintiff from the criminal acts of third parties, and that plaintiffs handicap was fully accommodated. With regard to plaintiffs premises liability claim, the trial court granted summary disposition for defendants on the ground that the sod throwing was unforeseeable and that defendants took reasonable measures to protect their patrons. The trial court also granted summary disposition for defendants on plaintiffs handicapper discrimination claim, holding that defendants provided plaintiff with full and equal utilization of the facilities.
The Court of Appeals affirmed in an unpublished per curiam decision.[7] As an initial matter, the Court of Appeals noted that both the parties and the trial court had failed to recognize that because Cellar Door was not the owner of the premises, it could not have been negligent under a premises liability theory.[8] By implication, the Court also held that Cellar Door could not have violated plaintiff’s rights under the mhcra. With regard to Pine Knob, the Court of *331 Appeals held that it owed no duty to protect plaintiff because it was unforeseeable as a matter of law that the crowd would throw sod at plaintiff during the concert. In that respect, the Court of Appeals found that the instant case was factually distinguishable from MacDonald because (1) unlike MacDonald, in the instant case there was no evidence whatsoever that defendants had formulated a specific policy to deal with sod-throwing incidents, (2) the sod-throwing incident in this case occurred before the incident in MacDonald, and (3) in MacDonald, the plaintiff was injured during the second occurrence of sod throwing during the same concert, whereas in this case, there were no incidents of sod throwing during the prior evening’s performance that involved the same bands. The Court of Appeals also held that Pine Knob fully accommodated plaintiff’s disability.
One panel member dissented in part, arguing that “[although plaintiff did not present evidence regarding the number of previous sod throwing incidents or the dates and circumstances surrounding those previous occurrences, plaintiff nonetheless established the existence of a genuine issue of material fact with respect to whether the sod throwing incident at issue in this case was foreseeable.” The dissent further suggested that the reasonableness of Pine Knob’s conduct with respect to protecting the patrons with disabilities from injuries should have been submitted to a jury.
This Court granted plaintiff’s application for leave to appeal.[9]
*332 m. STANDARD OF REVIEW
We review de novo a trial court’s decision to grant or deny summary disposition. The Herald Co v Bay City, 463 Mich 111, 117; 614 NW2d 873 (2000). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and allows consideration of only the pleadings. Wade v Dep’t of Corrections, 439 Mich 158, 162; 483 NW2d 26 (1992). The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. Id. at 163.
A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual support of a claim. Smith v Globe Life Ins Co, 460 Mich 446, 454; 597 NW2d 28 (1999). The motion should be granted if the evidence demonstrates that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. Id. at 454-455, quoting Quinto v Cross & Peters Co, 451 Mich 358, 362-363; 547 NW2d 314 (1996).
rv. THE DUTIES OF A MERCHANT
We recognized in Mason the general rule that merchants “do not have a duty to protect their invitees from unreasonable risks that are unforeseeable.” Id. at 398. Accordingly, we held that a duty arises only on behalf of those invitees that are “ ‘readily identifiable as [being] foreseeably endangered.’ ” Id., quoting Murdock v Higgins, 454 Mich 46, 58; 559 NW2d 639 (1997). We further held that the measures taken must be reasonable. Mason at 405. In the *333 instant cases, we are called upon to further clarify the duty that we articulated in Mason.
Mason and its companion case, Goodman v Fort-ner, both involved altercations that began in bars. In Mason, one of the plaintiff’s friends, Dan Kanka, was involved in an altercation with another man, Thomas Geoffrey. The plaintiff was in a different area of the bar when the fight began, and only witnessed its conclusion. The bar’s bouncers immediately ejected Geoffrey and, in an attempt to avoid more conflict, instructed Kanka to remain until Geoffrey left the premises. When the plaintiff left the bar some time later, Geoffrey assaulted him in the parking lot, breaking his nose and jaw. Id. at 393-394. We upheld the dismissal of the plaintiff’s resulting premises liability claim on the ground that, because the plaintiff was not near the area where the initial fight occurred (and the defendant had no knowledge that the plaintiff was associated with either Kanka or Geoffrey), the defendant had no reason to believe that the plaintiff was in danger. Even viewed in a light most favorable to the plaintiff, we held that the facts did not support a finding that the attack on the plaintiff was foreseeable. Id. at 404.
In Goodman, the plaintiff’s girlfriend, Theresa Woods, was involved in a bar room scuffle with the plaintiff’s former girlfriend and mother of his child, Joslynn Lewis. The fight continued in the parking lot and then moved back inside the bar, with two of Lewis’ relatives joining the fray. Despite repeated requests that they call the police, the bar’s bouncers refused, although they did remove Lewis and her group from the bar. When the plaintiff and Woods attempted to leave the bar, Lewis and her friends *334 were waiting out in the parking lot, yelling at the plaintiff and threatening to kill him. There was evidence that the bouncers standing at the door could undoubtedly hear the commotion. One of Lewis’ friends eventually shot the plaintiff in the chest. Id. at 395-396. We upheld a jury verdict in the plaintiff’s favor on the ground that a reasonable jury could find that the harm to the plaintiff was foreseeable. We also held that a reasonable jury could find that the defendant did not take reasonable steps to prevent the plaintiff’s injury. Id. at 404-405.
As we made clear in Williams and Scott, a merchant has no obligation generally to anticipate and prevent criminal acts against its invitees. Indeed, as the Court of Appeals panel in Lowry correctly noted, we have never recognized as “foreseeable” a criminal act that did not, as in Goodman, arise from a situation occurring on the premises under circumstances that would cause a person to recognize a risk of imminent and foreseeable harm to an identifiable invitee. Consequently, a merchant’s only duty is to respond reasonably to such a situation. To hold otherwise would mean that merchants have an obligation to provide what amounts to police protection, a proposition that we soundly rejected in both Williams and Scott.[10] To the extent that, in Goodman, we relied upon evidence of previous shootings at the bar in assessing whether a reasonable jury could find that the Goodman plaintiff’s injury was foreseeable, we *335 now disavow that analysis as being flatly inconsistent with Williams and Scott.
A premises owner’s duty is limited to responding reasonably to situations occurring on the premises because, as a matter of public policy, we should not expect invitors to assume that others will disobey the law. A merchant can assume that patrons will obey the criminal law. See People v Stone, 463 Mich 558, 565; 621 NW2d 702 (2001), citing Prosser & Keeton, Torts (5th ed), § 33, p 201; Robinson v Detroit, 462 Mich 439, 457; 613 NW2d 307 (2000); Buczkowski v McKay, 441 Mich 96, 108, n 16; 490 NW2d 330 (1992); Placek v Sterling Hts, 405 Mich 638, 673, n 18; 275 NW2d 511 (1979). This assumption should continue until a specific situation occurs on the premises that would cause a reasonable person to recognize a risk of imminent harm to an identifiable invitee. It is only a present situation on the premises, not any past incidents, that creates a duty to respond.
Subjecting a merchant to liability solely on the basis of a foreseeability analysis is misbegotten. Because criminal activity is irrational and unpredictable, it is in this sense invariably foreseeable everywhere. However, even police, who are specially trained and equipped to anticipate and deal with crime, are unfortunately unable universally to prevent it. This is a testament to the arbitrary nature of crime. Given these realities, it is unjustifiable to make merchants, who not only have much less experience than the police in dealing with criminal activity but are also without a community deputation to do so, effectively vicariously liable for the criminal acts of third parties.
*336 Having established that a merchant’s duty is to respond reasonably to criminal acts occurring on the premises, the next question is what is a reasonable response? Ordinarily, this would be a question for the factfinder. However, in cases in which overriding public policy concerns arise, this Court may determine what constitutes reasonable care. See Williams, supra at 501, citing Moning v Alfono, 400 Mich 425, 438; 254 NW2d 759 (1977). Because such overriding public policy concerns exist in the instant cases, the question of reasonable care is one that we will determine as a matter of law. Williams, supra at 501. We now make clear that, as a matter of law, fulfilling the duty to respond requires only that a merchant make reasonable efforts to contact the police. We believe this limitation is consistent with the public policy concerns discussed in Williams.
In Williams, supra, the plaintiff was shopping in the defendant’s store when an armed robbery occurred. As the plaintiff, a store patron, attempted to flee, the robber shot him. The plaintiff sued the defendant store, alleging that it breached its duty to exercise reasonable care in part by not providing armed and visible security guards for the security of the store’s patrons. Id. at 497. This Court held that a merchant’s duty of reasonable care does not include providing armed, visible security guards to deter criminal acts of third parties. Id. at 501. We reasoned that such a duty is vested in the government alone, and that to shift the burden to the private sector “would amount to advocating that members of the public resort to self-help. Such a proposition contravenes public policy.” Id. at 503-504. We further explained that
*337 [t]o require defendant to provide armed, visible security guards to protect invitees from criminal acts in a place of business open to the general public would require defendant to provide a safer environment on its premises than its invitees would encounter in the community at large. Defendant simply does not have that degree of control and is not an insurer of the safety of its invitees. [Id. at 502.]
The rationale of this Court in Williams for not requiring merchants to provide security guards to protect invitees from the criminal acts of third parties is the same rationale for not imposing on merchants any greater obligation than to reasonably expedite the involvement of the police. That is, the duty to provide police protection is vested in the government. Williams, supra at 501. To require a merchant to do more than take reasonable efforts to expedite the involvement of the police, would essentially result in the duty to provide police protection, a concept that was rejected in Williams.[11] Merchants do not have effective control over situations involving spontaneous and sudden incidents of criminal activity. On the contrary, control is precisely what has been lost in such a situation.[12] Thus, to impose an obligation on the merchant to do more than take reasonable efforts to contact the police is at odds with the public policy principles of Williams.
In Scott, supra at 452, we expanded on this theme by holding that, even where a merchant voluntarily *338 takes safety precautions in an effort to prevent criminal activity, “[s]uit may not be maintained on the theory that the safety measures are less effective than they could or should have been.” Consequently, in any case in which a factfinder, be it the trial court or a jury, will be assessing the reasonableness of the measures taken by a merchant in responding to an occurrence on the premises, a plaintiff may not present evidence concerning the presence or absence of security personnel, or the failure to otherwise resort to self-help, as a basis for establishing a breach of the merchant’s duty. A jury thus must be specifically instructed in accordance with the principles of WiUiams and Scott as we have outlined them here.
To summarize, under Mason, generally merchants “have a duty to use reasonable care to protect their identifiable invitees from the foreseeable criminal acts of third parties.” Id. at 405. The duty is triggered by specific acts occurring on the premises that pose a risk of imminent and foreseeable harm to an identifiable invitee. Whether an invitee is readily identifiable as being foreseeably endangered is a question for the factfinder if reasonable minds could differ on this point. See id. at 404-405. While a merchant is required to take reasonable measures in response to an ongoing situation that is taking place on the premises, there is no obligation to otherwise anticipate the criminal acts of third parties. Consistent with WiUiams, a merchant is not obligated to do anything more than reasonably expedite the involvement of the police. We also reaffirm that a merchant is not required to provide security guards or otherwise resort to self-help in order to deter or quell such occurrences. Williams, supra.
*339 v. application
a. Macdonald
The Court of Appeals in MacDonald held that plaintiff presented sufficient evidence to create a genuine issue of material fact concerning whether the harm to her was foreseeable. We agree that plaintiff created a juiy-submissible issue concerning whether she was readily identifiable as being foreseeably endangered once the sod throwing began. However, we reject the Court of Appeals reliance on incidents previous to the day in question as a basis for concluding that sod throwing was “foreseeable” in this instance. The Mason duty, as clarified here, is not based upon the general question whether a criminal act was foreseeable, but, rather, once a disturbance occurs on the premises, whether a reasonable person would recognize a risk of imminent harm to an identifiable invitee. As stated, a merchant has no obligation to anticipate the criminal acts of third parties.
The Court of Appeals also held that a genuine issue of material fact exists concerning whether Pine Knob took reasonable measures in response to the sod throwing. We disagree. Because Pine Knob already had the police present at the concert, Pine Knob fully discharged its duty to respond. Thus, we reverse the Court of Appeals decision denying Pine Knob’s motion for summary disposition and reinstate the trial court’s decision to grant summary disposition for Pine Knob pursuant to MCR 2.116(C)(8) and (10).
We also reverse the Court of Appeals decision that the trial court abused its discretion in denying plaintiff’s motion to amend her complaint to add certain theories including design defect, nuisance, and third- *340 party beneficiary claims and to more specifically set forth her negligence claim. We conclude that plaintiffs amendment would have been futile.
B. LOWRY
In contrast with MacDonald, the Court of Appeals panel in Lowry relied solely on the absence of evidence concerning previous incidents of sod throwing to uphold the trial court’s decision granting summary disposition for Pine Knob. This too was error. Whether Pine Knob could have anticipated that sod throwing would be a problem does not answer the legally relevant question whether plaintiff Lowry was foreseeably endangered once sod throwing began on the day of plaintiff’s attendance. However, in accordance with this opinion, because Pine Knob already had the police at the concert, we hold that Pine Knob had no further obligation. Pine Knob discharged its duty to respond by having police present once the sod throwing began. Thus, we affirm the Court of Appeals affirmance of the trial court’s decision to grant summary disposition in favor of Pine Knob. We also affirm the Court of Appeals decision to uphold summary disposition in Pine Knob’s favor on plaintiff’s handicapper discrimination claim. We agree that Pine Knob fully accommodated plaintiff’s disability.
VI. RESPONSE TO THE DISSENT
The dissent accuses us of “uproot[ing] the entire basis for imposing a duty on merchants to protect their invitees that we expressed in Mason . . . .” Post at 349. We disagree.
*341 The principal difference between the dissent and the majority lies in our respective attempts to reconcile our several premises liability cases and the policies that undergird them. The dissent seeks in effect to limit or ignore the holdings of Williams and Scott. The majority refuses to do so.
In its effort to explain away the tort duty policy choices this Court adopted in Williams and Scott, the dissent reads into Mason rationales and holdings the dissent would have liked Mason to have adopted but which that opinion plainly did not embrace.
We believe that the actual policy rationales of Williams and Scott must be reconciled with the merchant’s duty set forth in Mason. In reconciling these cases, we seek to establish a clear rule. We reject the premises liability rule that the dissent proposes because (1) it provides little guidance to any premises owner concerning its obligations under law and (2) despite its claims to the contrary, the dissent’s rule would unfairly expose merchants in high-crime areas to excessive tort liability and increase the pressure on commercial enterprises to remove themselves from our troubled urban and high-crime communities. Mason undeniably cites 2 Restatement Torts, 2d, § 344, and comment f.[13] However, in quoting *342 that section and comment of the Restatement, the Mason majority did not “recognize” the imposition of a duty on a merchant to protect its invitees from criminal conduct of third parties as being “contingent upon whether the character of his business, or past experience . . . gives the merchant knowledge or reason to know that those acts may occur again.” Post at 348. Other than in the text of the Restatement, the “character of the merchant’s business” is not even discussed in Mason. Nor did we “implicitly note” in Mason that a careful consideration of the facts in each case, namely, the nature of the harm, etc., is essential in determining whether a § 344 analysis is justified. Thus, the dissent ingeniously injects concepts into Mason that clearly were not adopted by the Mason court.
The dissent attempts to distinguish Williams from Mason and the instant cases by explaining that Williams involved “random crime” “unrelated to the character of the merchant’s business,” post at 350, 352, and asserting that the sod-throwing incidents in these cases were “related” to Pine Knob’s business because the nature of the harm was created by the *343 “character” of its business. We do not agree with the dissent’s focus on the “randomness” or spontaneity of a criminal act as being a relevant factor in determining whether an occurrence was foreseeable. The key inquiry is not whether the criminal act was “random,” but rather whether, as stated in Mason, the merchant has reason to recognize a risk of imminent harm to an identifiable invitee. In Williams, the merchant had no reason to expect the criminal attack. In Mason, we distinguished Williams and Scott by explaining that in Williams and Scott “[t]he merchants had had no previous contact with the assailants and could not have determined that the plaintiffs were in danger.” Mason, supra at 402. The rule set forth in this opinion is thus consistent with Mason as well as Williams and Scott: A merchant should not be expected to anticipate any type of criminal activity, whether “random” or otherwise, before there is some specific activity on the premises creating a foreseeable risk of imminent harm to an identifiable invitee.[14] The merchant then must make efforts to notify those deputized to deal with such circumstances: the police.
Moreover, none should be mistaken that the test of “relatedness” proposed by the dissent would apply, if not now, then very soon, to virtually all criminal acts in commercial establishments. It cannot be questioned that there can always be, given crime’s unfor- *344 túnate pervasiveness, a plausible argument that the criminal being drawn to the business enterprise at all makes it “related” in such a way as to trigger liability.[15] Surely after one crime has occurred on the premises, or even in a similar business, with the criminal having been arguably drawn to that business, the “relatedness” test will be met. Indeed, probably even more attenuated linkages (the crime rate in the area comes to mind) will suffice, as the law develops, to establish “relatedness.” This will all mean, and it was this the Williams and Scott courts understood, that urban merchants will be exposed to crippling tort liability.
Thus, the dissent’s rule would have its most pernicious and devastating effect on the many commercial businesses that are located in Michigan’s urban and high-crime areas. Avoiding this kind of adverse effect was one of the Court’s primary concerns when it adopted the Williams and Scott principles.[16] It simply *345 cannot be gainsaid that businesses in urban and high-crime areas do foresee that criminals may attack their establishments — opportunistically or with premeditation. Indeed, the fact that many businesses in our urban and high-crime areas erect barriers to protect their employees is ample proof that they actually anticipate crime occurring in their establishments. Plainly stated, their precautions give proof that they understand that criminal acts in their establishments are not “random” as the dissent would understand it, but rather are foreseeable risks related to the business.
For these policy reasons, we, as the courts before us, decline to adopt the dissent’s proposed rule.
vn. conclusion
Consistent with our decisions in Williams, Scott, and Mason, we conclude that merchants have a duty to respond reasonably to situations occurring on the premises that pose a risk of imminent and foreseeable harm to identifiable invitees. We hold that the duty to respond is limited to reasonably expediting the involvement of the police, and that there is no duty to otherwise anticipate the criminal acts of third parties. Finally, we reaffirm that merchants are not required to provide security personnel or otherwise *346 resort to self-help in order to deter or quell such occurrences.
In MacDonald, we reverse the Court of Appeals decision denying summary disposition. In Lowry, the decision of the Court of Appeals to grant summary disposition for Pine Knob is affirmed.
Corrigan, C.J., and Weaver, Taylor, and Markman, JJ., concurred with Young, J.

 The 1994 sod-throwing incident resulted in the lawsuit at issue in Lowry.

 Although not fully explained by the parties, apparently Pine Knob Music Theater and Arena Associates is one entity. Capital Cities/ABC, Inc., the owner of the radio station that sponsored the concert, was dismissed as a party defendant from the case early on and is not a party to this appeal.

 233 Mich App 395; 593 NW2d 176 (1999).

 Approximately forty security officers and eleven officers from the Oakland County Sheriffs Department were working at the concert.

 461 Mich 992 (2000).

 Approximately seventy crowd control personnel, as well as officers from the Oakland County Sheriff’s Department, were present at the concert.

 Issued June 8, 1999 (Docket No. 206875).

 Plaintiff does not challenge this aspect of the Court of Appeals decision. Accordingly, we deem plaintiff to have abandoned his claims against Cellar Door.

 461 Mich 992 (2000).

 Mason cited § 344 of 2 Restatement Torts, 2d, and comment f to § 344, which indicate that a merchant has a duty to take precautions against the criminal conduct of third persons that may be reasonably anticipated. We overrule that portion of Mason as conflicting with Williams and Scott.

 A merchant may voluntarily do more than reasonably attempt to notify the police. However, we hold today, that a merchant is under no legal obligation to do so.

 In most instances, other than merely being the owner of the business being victimized, the merchant and invitee will be situated in roughly the same position in terms of their vulnerability to the violent criminal predator.

 The dissent cannot seriously suggest that the mere quotation of comment f of the Restatement in Mason constituted an adoption of it. Comment f explicitly provided that a premises owner’s duty encompasses the responsibility to “provide a reasonably sufficient number of servants to afford a reasonable protection” against the criminal acts of third parties. This proposition was flatly rejected in both Williams and Scott. See Williams at 502-503 and Scott, supra. Nevertheless, “this Court is not, nor is any other court, bound to follow any of the rules set out in the Restatement.” Rowe v Montgomery Ward, 437 Mich 627, 652; 473 NW2d 268 (1991). “[T]he application of a common-law rule to a particular set of facts does not turn on whether those facts can be characterized in the language *342 of the Restatement.” Smith v Allendale Mut Ins Co, 410 Mich 685, 712-713; 303 NW2d 702 (1981). While the drafters of the Restatements “may sometimes strive to choose ‘the better rule’ or to predict or shape the development of the law, its influence depends upon its persuasiveness." Id. at 713 (emphasis added).
Even where a particular Restatement section has received specific judicial endorsement, cases where that section is invoked must be decided by reference to the policies and precedents underlying the rule restated. Textual analysis of the Restatement is useful only to the extent that it illuminates these fundamental considerations. [Id. (emphasis added).]
Further, our rejection of § 344, and comment f, is consistent with the overriding public policy concerns discussed in this opinion.

 Mason distinguished Williams by analyzing the merchant’s ability to foresee imminent harm, i.e., awareness of a situation. However, as articulated in this opinion, we would not go so far as to consider specific prior incidents, as that would conflict with the general proposition in Williams and Scott that merchants are “ordinarily” not legally responsible to patrons and others on their premises for the criminal acts of third parties, as well as the premise that a merchant can assume that others will obey the criminal law until they actually do otherwise. See ante at 334-335.

 The “relatedness” test proposed by the dissent states:
If the nature of the harm is random and spontaneous, and thus unrelated to the character of the merchant’s business, the merchant cannot be expected to foresee its occurrence, and reference to prior similar occurrences is not justified. If the nature of the harm was created by the character of the merchant’s business, reference to prior similar occurrences is justified because a merchant can be expected to foresee such harm happening again, in light of his prior experience with such acts. Post at 352.

 Imposing liability on the business owner, poses the threat that businesses may move away from high-crime areas. See Homant & Kennedy, Landholder Responsibility for Third Party Crimes in Michigan: An Analysis of Underlying Legal Values, 27 U Tol L R 115, 147 (1995). See also McNeal v Henry, 82 Mich App 88, 90, n 1; 266 NW2d 469 (1978), stating:
In the majority of urban communities, both large and small businesses could not bear the heavy insurance burden which would be required to protect against this extraordinary kind of liability. Some *345 of our big cities have more than their share of destructive and violent persons, young and old, who roam through downtown department stores and other small retail businesses stealing and physically abusing legitimate patrons. Guards are placed in the stores but those activities continue. We fear that to hold businessmen liable for the clearly unforeseeable third-party torts and crimes incident to these activities would eventually drive them out of business.