*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN BLACKWELL,

      Plaintiff-Appellant,

v

DEAN FRANCHI and DEBRA FRANCHI,

      Defendants-Appellees.

FOR PUBLICATION
March 14, 2019

No. 328929
Oakland Circuit Court
LC No. 14-141562-NI

ON REMAND

Before: K. F. KELLY, P.J., and GLEICHER and SHAPIRO, JJ.

GLEICHER, J. (*concurring*)

Susan Blackwell attended a holiday party in the Franchi home. Debra Franchi suggested that guests place their purses in the "mudroom." A dimly lit hallway led from the Franchis' foyer to the mudroom. The mudroom itself was dark. Unbeknownst to Blackwell, there was an eight-inch drop between the hallway floor and that of the mudroom. Blackwell fell when she entered the mudroom. The question presented in our Supreme Court's remand order is whether the Franchis had a duty to warn Blackwell of the step.

Restatement Torts, 2d, § 342, p 210, establishes the duty of care the Franchis owed to Blackwell, a licensee. The duty has two components: a requirement that the landowner exercise reasonable care to make a known dangerous condition safe, and a duty to warn. *Id*. at § 342(b). A duty to warn arises when a landowner knows of a condition, "should realize that it involves an unreasonable risk of harm . . . and should expect that [a licensee] will not discover or realize the danger[.]" *Id*. at § 342(a). The lead opinion concludes that the evidence fulfills the Restatement requirements, necessitating that a jury determine whether the Franchis bear liability for the injuries Blackwell sustained when she fell. I concur, and write separately to expand the lead opinion's analysis and to respectfully respond to the dissent.

# I

The Restatement's provisions apply *generally* to premises liability cases involving social guests and licensees. They have been adopted by our Supreme Court. *Preston v Sleziak*, 383 Mich 442, 453; 175 NW2d 759 (1970), overruled in part on other grounds by *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591; 614 NW2d 88 (2000).[1] In this sense, the duty applicable to this case is not subject to debate.

Legal duties such as § 342 incorporate broad policy choices. See *Stitt*, 462 Mich 591 (holding that as a matter of policy, a noncommercial visitor is a licensee rather than an invitee), and *MacDonald v PKT, Inc*, 464 Mich 322, 335; 628 NW2d 33 (2001) ("A premises owner's duty is limited to responding reasonably to situations occurring on the premises because, as a matter of public policy, we should not expect invitors to assume that others will disobey the law."). Courts select the policies reflected in *general* statements about duty.

Whether a general statement about duty extends to a defendant's *specific* conduct presents a question of fact for a jury. When a court has recognized that certain policy choices justify a duty and has defined its scope, a jury decides whether the duty has been breached. Professor Stephen Sugarman describes the distinction as follows:

> [M]ore broadly, the difference between the doctrines comes to this. "Breach/No breach" involves the evaluation of a specific defendant. Given what she knew or should have known, is there some way that the community (i.e., the jury, or perhaps the judge) thinks she should have acted otherwise? "No duty," however, is not a matter of making an evaluation of the specific facts of this case. Rather, it is a global determination that, for some overriding policy reason, courts should not entertain causes of action for cases that fall into certain categories. [Sugarman, *The Monsanto Lecture: Assumption of Risk*, 31 Val U L Rev 833, 843 (1997).]

---

[1] The Supreme Court's remand order confines this Court's consideration of the Franchis' duty to the failure to warn component of § 342(a). Respectfully, this constraint strikes me as inconsistent with Justice MARKMAN's dissent. Both Justice MARKMAN and Judge KELLY urge that no duty existed here because Blackwell could and should have turned on the light, eliminating the danger of the drop-off. In other words, both dissenters contend that Blackwell could and should have made the premises reasonably safe *for herself*. Logically, however, if the relevant duty required a licensee to turn on the light despite her lack of awareness of the step, the landowner would bear the same duty—to turn on the light and make the room safe for invited guests directed to it. If the plaintiff bore a duty of care to make the room safe before she entered, it necessarily follows that the Franchis shared that duty, particularly since they had knowledge of the step. The component of Restatement Torts, 2d, § 342(b), requiring that a landowner "make the condition safe," I suggest, compels this conclusion. And because Justice MARKMAN and Judge KELLY rest their dissents on this aspect of the rule, it merits more discussion than the remand order permits.

Courts make the rules governing duty, and juries apply them.[2]

Restatement Torts, 2d, § 342 controls the duty analysis in this case and defines the duty's parameters. Our job is to apply that standard to the facts of the case, and to decide a narrow question: is there a reason that a jury should not hear this dispute? I agree with the lead opinion that questions of fact demand a jury's resolution, and that no other reason exists for a summary dismissal.

II

The evidence substantiates that the Franchis knew of the abrupt drop-off between the hallway and the mudroom, and that the room was unlit during the party. Section 342 instructs that the remaining questions are whether the dark step involved an unreasonable risk of harm to a visitor unaware of it, and whether the Franchis should have anticipated that Blackwell would not discover or realize the danger on her own. Affirmative answers mean that the Franchis bore a duty to warn Blackwell of the drop-off.

The lead opinion frames these questions as standard-of-care issues, explaining that whether a duty exists is just another way of asking whether the general standard of care has been breached. The dissent disapproves of that formulation. But general negligence principles support that the concept of duty encapsulates that of a standard of care. Here is Dean Prosser's take:

> "[D]uty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do or must not do, is a question of the standard of conduct required to satisfy the duty. The distinction is one of convenience only, and it must be remembered that the two are correlative, and one cannot exist without the other. [Prosser & Keeton, Torts (5th ed), § 53, p 356.]

While the dissent finds it "inexplicable" that the lead opinion "discusses at length defendants' 'standard of care,' " the answers we seek are inextricably linked to that standard. Or, as Dean Prosser puts it, a duty "may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Id*.

Nomenclature aside, the real issue is not whether the law imposed a duty on the Franchis as premises owners; the Restatement and the Supreme Court say that it did. Rather, under the remand order, our task is to determine whether under the circumstances of this case, a jury should decide whether the Franchis had a duty to warn Blackwell of the step before she walked into the dark mudroom.

---

[2] The narrow exception to this rule is that a court may summarily decide a *specific* duty question when reasonable minds cannot differ as to the application of a duty to a fact situation.

The dissent treats the duty question as one only of law. "[T]here was nothing to suggest that defendants should have known that plaintiff would not discover the step," the dissent insists, and therefore "[d]efendants were entitled to expect that [Blackwell] would be on the alert to discover conditions which involved risk to her." (Quotation marks omitted.) In the dissent's view, this means that as a matter of law, the Franchis owed no duty. I respectfully disagree for three reasons.

First, the dissent misperceives the nature of the duty described in the Restatement. The duty of care owed to a social guest is quite minimal. A landowner need not closely inspect her premises for dangers or latent defects. Nor does the duty entail "ensuring" a guest's safety, or even preparing a safe place for a visit. Rather, the Restatement imposes a duty on the landowner to use reasonable care when the landowner *knows* of a safety risk and can reasonably anticipate that a social guest does not. Essentially, the Restatement equally allocates risks. The landowner who knows of dangers in her home can protect herself from them. A landowner who provides social guests with that same knowledge conforms to the standard of care. Once the knowledge-sharing is accomplished, the guest and the landowner stand (or fall) on precisely the same factual and legal footings. Here, a simple warning of the step's presence and nothing more would have sufficed.

The dissent would have social guests alone bear the legal responsibility for detecting conditions on the property that present "an unreasonable risk of harm."[3] According to the dissent, Blackwell should have "discover[ed]" the step without being warned about it. But this proposition eliminates the landowner's duty entirely because it holds licensees responsible for any risk that the guest could possibly have avoided, including, in the example penned by Chief Justice MCCORMACK in her concurrence to the Supreme Court's remand order, that of "an open shark tank" at the bottom of the mudroom drop-off. *Blackwell v Franchi*, 502 Mich 918, 921 (2018) (MCCORMACK, J., concurring). Were such a tank installed just inside the entry to the dark mudroom, flicking on the light surely would have revealed it. In the dissent's view, however, a potentially discoverable danger—even a shark tank—is no danger at all if a guest can possibly dodge it even without knowing that the danger exists.

The dissent's second error relates inextricably to the first. Blackwell's failure to turn on the light is relevant not to the Franchis' duty, but to her own. This is called comparative negligence. The availability of the affirmative defense of comparative negligence in a premises liability case is well established. See *Riddle v McLouth Steel Prods Corp*, 440 Mich 85, 98; 485 NW2d 676 (1992). Should Blackwell have looked for a light before walking in to the mudroom? Perhaps. That determination, however, depends on sorting and weighing the facts, including by comparing Blackwell's negligence with that of the Franchis. Therefore, it belongs only to the jury.

---

[3] The dissent suggests that the darkened step did not present an unreasonable risk of harm. I would agree that objectively, a well-lit eight-inch step is not dangerous. But an invisible eight-inch step poses an entirely different risk. Whether that risk is "unreasonable" constitutes a jury question. "If the proofs create a question of fact that the risk of harm was unreasonable, the existence of duty as well as breach become questions for the jury to decide." *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617; 537 NW2d 185 (1995).

- 4 -

Finally and most importantly, the dissent fails to distinguish between questions of fact and questions of law. The *general* duty applicable to this case is set forth in the Restatement. The dissent reasons that an "unremarkable" step could not have posed an "unreasonable" risk of harm, and therefore no *specific* duty of care existed in this case. It is certainly true that a normal, well-lit, eight-inch step is not objectively dangerous; objectively, the likelihood of injury for a person walking down a visible, everyday step approaches zero. But an invisible eight-inch step poses a different risk. We negotiate visible steps safely because we adjust our strides to account for the changes in riser heights. An unlit step escalates the risk of falling for the simple reason that when we cannot anticipate and accommodate a change in tread level. Whether the risk posed by the unlit step into the mudroom was reasonable or unreasonable is a quintessential question of fact, particularly since the risk was known to the Franchis and could have been eliminated with minimal effort on their part. "If the proofs create a question of fact that the risk of harm was unreasonable, the existence of duty as well as breach become questions for the jury to decide." *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617; 537 NW2d 185 (1995).[4]

III

In *Riddle*, 440 Mich at 96, the Supreme Court explained that "[o]nce a defendant's legal duty is established, the reasonableness of the defendant's conduct under that standard is generally a question for the jury." In a premises liability case also involving a step, the Supreme Court subsequently echoed that approach: "If the jury determines that the risk of harm was unreasonable, then the scope of the defendant's duty to exercise reasonable care extended to this particular risk." *Bertrand*, 449 Mich at 617. *Riddle* and *Bertrand* limit the court's role to determining whether a duty exists, and to announcing its general contours. The jury figures out whether the specific risk is unreasonable, and whether the landowner breached its duty of care. See M Civ JI 19.06 (incorporating these principles).

The lead opinion holds that reasonable people may disagree about whether an unwarned-of eight-inch drop-off into a darkened room presents an unreasonable risk of injury, and whether Blackwell should have discovered that condition on her own. I agree that a jury may reasonably conclude that the step was invisible given that the room was dark and the hallway dimly lit, and that the drop-off was sudden enough to merit a warning. Neither of these propositions stretch credulity. A jury may also decide that Blackwell should have located and turned on the light before venturing into a dark and unknown place. Her theoretical ability to do so (we have no facts in this regard) does not extinguish the Franchis' general duty to licensees. A reasonable jury could decide that due to the step and the darkness, it was not safe to invite Blackwell to put her purse in the mudroom without supplying a warning. Or a jury may adopt the opposite views.

The point is that whether this step from a dim hallway into a dark room presents an unreasonable risk of harm is not a question that judges should answer. As with any determination of "reasonableness" in a negligence case, we rely on juries to weigh the utility of a

---

[4] A more expansive discussion of the reasonableness of risk may be found in *Moning v Alfono*, 400 Mich 425, 450; 254 NW2d 759 (1977). In *Moning*, Justice CHARLES LEVIN cited the Restatement Torts, 2d, § 291, for the proposition that "[t]he reasonableness of the risk depends on whether its magnitude is outweighed by its utility." *Id*. The social utility of a *darkened* step is zero.

thing or of an actor's conduct, and to compare that benefit to the likelihood of injury and the cost or bother of doing things a different way. Where the answers could go either way, as here, judges are in no better position than juries to make the call. More importantly, our common law has appointed the jury as the umpire of these disputes. I continue to concur with the lead's conclusion that reversal of the grant of summary disposition is warranted.


/s/ Elizabeth L. Gleicher