**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0455n.06

Case No. 18-2235

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Aug 28, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MICHELLE SROKA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| WAL-MART STORES EAST, LP, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: MOORE, KETHLEDGE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Anyone who hears Michelle Sroka's story cannot but have the utmost sympathy for her: Heading to the local Wal-Mart to buy chip dip before a Friday night get-together with friends, she found herself brutally and randomly attacked in the dairy department by an unknown assailant acting for an unknown reason. Yet no matter which way the equities lean, our job is to impartially apply the law. In this diversity suit against Wal-Mart, that means we must follow Michigan's common-law rule that a merchant's duty to its customers in this context requires it only to make reasonable efforts to contact the police. Because all agree that the police received immediate notice of this attack, we affirm summary judgment for Wal-Mart.

I.

Around 7:00 p.m. on September 12, 2014, Sroka visited her local Wal-Mart to buy chip dip. She headed straight for the dairy department, where she passed a man who appeared to be

shopping with his family. Sroka did not bump this man, look at him the wrong way, or say anything to him. But, after she passed, the man said something—maybe that Sroka "shouldn't be looking at him." When Sroka turned around, the man stood right behind her with his cane held high ready to strike. Stepping away from this attacker, Sroka fell backward into a dairy cooler. While he stood over Sroka, the man struck her twice in the head with his cane and then punched her repeatedly anywhere he could make contact. The assault began around 7:07 p.m. and lasted about a minute, leaving Sroka bruised and bloodied.

No Wal-Mart employees were in the vicinity during this attack. But James Richards, a customer some 70 feet away, noticed a commotion and a man hovering over Sroka. He yelled and moved toward them to see if Sroka was okay. Sroka's attacker looked at him and turned to leave. Richards called 911 "immediately." He followed the man through the store, relaying information to the dispatcher while he walked.

Surveillance cameras show Sroka's assailant leaving Wal-Mart around 7:09 p.m. Sroka— a former military police officer with the United States Army National Guard—quickly regained her senses and began pursuing her attacker less than a minute after the attack. As she hurried to catch up with the assailant in the store, she recalls screaming for help to two unidentified Wal-Mart employees. This encounter is not on video, but Sroka says that she slowed for "a second, maybe three" when she reached these employees, and in "plain English" asked them to help her. She asserts that the employees did nothing.

Sroka also called 911 as she exited Wal-Mart. Her call came in just before 7:11 p.m.— three minutes after the attack. Sroka told the dispatcher to stay on the line so she could give a "play-by-play" as she pursued her assailant. She followed him across the Wal-Mart parking lot

and into a nearby neighborhood, where another woman saw her and made a third 911 call at 7:16 p.m.

Several police officers responded to these calls. Two or three minutes after getting a call, Officer Paul Walters found Sroka in the neighborhood. Sroka says that Walters directed her to stop the pursuit so he could attend to her injuries. An ambulance took her to the hospital.

During this time, Wal-Mart employees started sorting out what had happened. Co-managers James Barton and Lori Oaks heard a "Code White" for the dairy department, which meant that someone had been injured in that area. They immediately went there and saw the attack's aftermath, including blood on the floor. Barton and Oaks learned that an assault had occurred, that the attacker and the victim had left, and that a witness had called the police. After discussing next steps, they decided that they should call the police to verify that someone had contacted the authorities. Before they could do so, though, they spotted the police walking into the store.

The record leaves unclear the precise time that the first police officer arrived at Wal-Mart. A dispatch report suggests that Walters, who initially attended to Sroka in the neighborhood, entered the store at 7:30 p.m. Yet other officers also responded to the calls. And Richards, the customer who originally called 911, said that it took the police a "little while" to arrive at the store once he was outside watching the assailant escape. When the police arrived, they told Barton and Oaks that they would take control of the investigation.

The police attempted to identify Sroka's attacker. Walters met with a Wal-Mart security employee, Dedrick Sewell, to review video and screenshots of the assailant using the store's many cameras. Walters directed Sewell to preserve the video footage and to provide the police with a copy. Sergeant Joshua Gilbert, who led the later investigation, received and reviewed the

"unedited video." The video captured Sroka's assailant entering the dairy aisle and leaving it after the attack. No video exists of the assault itself. As it was fall in the Midwest, Wal-Mart had set up a temporary chip display for football season, which blocked the nearest camera's view of the location where the attack occurred.

Sroka sued Wal-Mart in Michigan state court about a year after the attack, alleging that the store negligently disregarded its duty to expedite police involvement. She also sought exemplary damages. Wal-Mart removed the case to federal court on diversity grounds.

After 18 months of discovery, Sroka filed a motion to amend her complaint. She proposed new counts claiming that certain Wal-Mart employees participated in a conspiracy to allow the assailant to attack her and intentionally destroyed evidence to hide this crime. The magistrate judge denied her motion. He explained that Sroka knew of the evidence used to support her motion many months before filing it, but waited until after extensive discovery to seek to amend her complaint. Regardless, he also found that the amendment would be "futile" because this conspiracy theory was "speculative and without support in this record." Apart from rejecting Sroka's attempt to add new claims, the judge nevertheless noted that Sroka had the right to file the "appropriate spoliation motions" to challenge the alleged destruction of evidence.

After Wal-Mart sought summary judgment, Sroka again moved to file an amended complaint. This complaint, which added "spoliation" allegations to her conspiracy claims, asserted that Wal-Mart had destroyed a video of the attack. Her contention rested on the deposition of Oaks, a co-manager, who testified (four years after the incident) that she did not "recall what was on the video a hundred percent," but "did see . . . a customer take a bat and hit someone[,] and that was really all that I had with the camera equipment." Sroka took this to mean that a video of the attack did, in fact, exist and that Wal-Mart had destroyed it. The magistrate judge denied her

motion for many of the same reasons that he had denied the last one. He again noted that Sroka's spoliation allegations "are more appropriately made in an evidentiary motion than in a pleading."

The district court granted summary judgment to Wal-Mart. *Sroka v. Wal-Mart Stores East, LP*, No. 16-10149, 2018 WL 4509583, at *6 (E.D. Mich. Sept. 20, 2018). Because the police were called immediately, the court reasoned, Wal-Mart could not have breached its duty to reasonably expedite their involvement. *Id.* at *3–5.

## II.

Sroka challenges both the district court's conclusion that Michigan negligence law entitled Wal-Mart to summary judgment, and its failure to consider her spoliation arguments.

*Negligence*. Sitting in diversity, we apply Michigan substantive law and must follow "the rulings of the state supreme court" on the scope of that law. *Germain v. Teva Pharms., USA, Inc. (In re Darvocet, Darvon, & Propoxyphene Prods. Liability Litig.)*, 756 F.3d 917, 937 (6th Cir. 2014); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). But we follow federal procedural rules in the process, so we review the summary-judgment order under our usual federal standard— de novo. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 453–54 (6th Cir. 2001).

A Michigan negligence claim has four elements: "duty, breach of that duty, causation, and damages." *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587, 590 (Mich. 2004); *Mouzon v. Achievable Visions*, 864 N.W.2d 606, 608 (Mich. Ct. App. 2014) (per curiam). We can start (and end) with breach. "[M]erchants 'do not have a duty to protect their invitees from unreasonable risks that are unforeseeable.'" *MacDonald v. PKT Inc.*, 628 N.W.2d 33, 38 (Mich. 2001) (citation omitted). Instead, they owe a duty only to "readily identifiable" invitees who are "foreseeably endangered." *Id.* (internal quotation marks omitted). And because a "merchant can assume that patrons will obey the criminal law," the merchant need not guard against criminal acts "until a

specific situation occurs on the premises that would cause a reasonable person to recognize a risk of imminent harm to an identifiable invitee." *Id.* at 39. When that type of situation occurs, the merchant need only "respond reasonably to criminal acts occurring on the premises." *Id.* "[W]hat is a reasonable response?" *Id.* A merchant "is not obligated to do anything more than reasonably expedite the involvement of the police." *Id.* at 41. Thus, "as a matter of law, fulfilling the duty to respond requires only that a merchant make reasonable efforts to contact the police." *Id.* at 39.

Wal-Mart did not breach its duty to Sroka under these principles. Before the assault, no facts suggested "a risk of imminent and foreseeable harm" to Sroka. *Id.* at 40. Sroka herself concedes that she "felt safe" when she entered the store and headed to the dairy department. Instead, the assault was entirely unpredictable. (Thankfully, it is still the rare occasion in which one person randomly and viciously attacks another.) So Wal-Mart's only duty was to expedite police involvement once it learned of the attack. *Id.* at 39–40. Because Richards called 911 and thereby ensured police involvement "immediately," Wal-Mart could not have violated its duty to call the police.

Sroka responds with the obvious point—Richards was *not* a Wal-Mart employee and no Wal-Mart employee *ever* called police. But no Wal-Mart employee witnessed the assault, so Richards's 911 call came before its employees could act. With the police already involved, Wal-Mart could not have breached its duty to *expedite* their involvement. *Cf. id.* at 41; *Mouzon*, 864 N.W.2d at 609. In any event, Wal-Mart's agents did "respond reasonably." *MacDonald*, 628 N.W.2d at 39. Once Barton and Oaks (the co-managers) heard the Code White, they immediately went to the dairy department, learned that an assault had occurred, and planned to call the police to verify that they had been notified. But the police showed up before they could do so. By that point, there was no need for Wal-Mart employees to "go through the motions of calling 911,"

*Sroka*, 2018 WL 4509583, at *4, because "the duty to contact the police has been met if the police are already present at the scene," *Mouzon*, 864 N.W.2d at 609.

Sroka thus shifts to different Wal-Mart employees, pointing to her brief encounter with two unidentified associates who ignored her pleas for help. Yet the police had received notice from Richards by then, and Barton and Oaks became involved soon after and confirmed police involvement. Barton and Oaks acted reasonably, so Wal-Mart did not breach its duty simply because "another employee could have called the police sooner"—or, in this case, because another employee could have *verified* that the police had been called sooner. *Harshaw v. Classic Coney Island*, No. 291980, 2010 WL 4908318, at *1 (Mich. Ct. App. Dec. 2, 2010) (per curiam).

Sroka next turns from Wal-Mart's people to its policies, arguing that its employees failed to follow its own internal procedures. Even if true, the Michigan Supreme Court has rejected the argument that a retailer's internal policies are enough to establish a duty greater than the common-law duty. *Buczkowski v. McKay*, 490 N.W.2d 330, 332 n.1 (Mich. 1992).

Sroka lastly switches from facts to law—asserting that this case should come out the same way as *Sykes v. Phoenix Promotions, LLC*, No. 338476, 2018 WL 5305232 (Mich. Ct. App. Oct. 25, 2018) (per curiam). There, the state court found a breach when the merchant had learned of a risk of imminent harm (a customer had flashed a gun after an altercation with the plaintiff), but then failed to ensure that the police were notified until much later, when the gun-wielding customer shot the plaintiff. *Id.* at *3–4. Nothing of the sort occurred here. Before the attack, Wal-Mart associates had no knowledge of any risk of harm to Sroka.

Sroka also contends that a merchant's duty to an invitee goes beyond calling the police. In her view, merchants also must provide all relevant evidence to the police, and Wal-Mart purportedly breached this duty by, for example, failing to give the police the allegedly destroyed

video and neglecting to take witness names and statements. This view conflicts with *MacDonald*, which states that a merchant's "*only*" duty is to "make reasonable efforts to *contact* the police." 628 N.W.2d at 39 (emphases added). *MacDonald* "ma[de] clear" that a merchant's duty to respond does not go beyond those efforts. *Id.* We are bound by the Michigan Supreme Court's views of its common law. *Germain*, 756 F.3d at 938.

*Spoliation.* Sroka spends significant time on a spoliation argument, asserting that the district court should have sanctioned Wal-Mart for destroying the video showing the attack. Even in diversity cases, we apply federal law to a party's request for sanctions on the ground that the other side destroyed evidence. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc). A party seeking sanctions for "spoliation," or the destruction of evidence, must "establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (internal quotation marks omitted).

We review a district court's spoliation decision for an abuse of discretion, giving deference to its fact-findings. *Id.* at 553–54. That standard shows our conundrum: We have no decision (or fact-findings) to review. Sroka failed to follow the magistrate judge's instructions to file a sanctions motion based on the allegedly missing video. We regularly refuse to consider issues that a party fails to raise below. *E.g.*, *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528–29 (6th Cir. 2014); *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 2001). This forfeiture rule covers an issue that "a party fails to *properly* 'present[] to the district court in the first instance.'" *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 361 (6th Cir. 2015) (emphasis added

and citation omitted). And "[t]he fact that the issue newly raised on appeal requires or necessitates a determination of facts is generally deemed good reason to refuse consideration of the issue for the first time" on appeal. *Minger v. Green*, 239 F.3d 793, 802 (6th Cir. 2001) (citation omitted).

Under these settled principles, Sroka forfeited her spoliation requests. Did a video of the attack exist? Did Wal-Mart destroy it? We do not know. While the magistrate judge appeared skeptical, Sroka never sought spoliation sanctions to give the district court an opportunity to find facts. She first packaged her destruction-of-evidence allegations into new *legal claims* against Wal-Mart in a last-minute amended complaint. The magistrate judge denied Sroka's motion to amend but told her that, if she believed "evidence was destroyed," she was "certainly well within her rights to file the appropriate spoliation motions." Rather than follow this suggestion, Sroka tried to amend her complaint a second time. The magistrate denied that motion too, again explaining that her spoliation allegations were "more appropriately made in an evidentiary motion than in a pleading." Sroka again ignored the court. She instead raised an argument in her opposition to Wal-Mart's summary-judgment motion titled "Spoliation and Obstruction." She suggested that the alleged destruction showed that Wal-Mart disregarded its duty to expedite police involvement—an argument that conflicts with Michigan negligence law. At day's end, we cannot fault the court for refusing to entertain Sroka's spoliation request in its summary-judgment order when Sroka refused to follow its instructions on how to properly present the request. *Cf. BASF Wyandotte Corp. v. Comm'r*, 532 F.2d 530, 539 (6th Cir. 1976).

We affirm.