# STATE OF MICHIGAN

# COURT OF APPEALS

TAMER ALWERFALLI,

   Plaintiff-Appellant,

v

LIVHO, INC., d/b/a HOLIDAY INN DETROIT
LIVONIA CONFERENCE CENTER, d/b/a
RADISSON HOTEL DETROIT LIVONIA,

   Defendant-Appellee,

and

TERRILL HICKS,

   Defendant.

UNPUBLISHED
April 19, 2016

No. 324827
Wayne Circuit Court
LC No. 12-017017-NO

Before: O'CONNELL, P.J., AND MARKEY AND O'BRIEN, JJ.

PER CURIAM.

In this premises liability action, plaintiff appeals by right the circuit court's order granting summary disposition to defendant, Livho, Inc. (Livho), doing business as both Holiday Inn Detroit Livonia Conference Center and Radisson Hotel Detroit Livonia. We affirm.

Plaintiff filed a complaint against Livho and defendant Terrill Hicks based on events that occurred on the evening of December 31, 2010- January 1, 2011, at a Champagne Explosion event hosted by a promoter, Jelinek Event Management (JEM). Security guards hired by JEM repeatedly struck plaintiff's head with glass bottles. Livho sought summary disposition pursuant to MCR 2.116(C)(10) primarily on the basis that it satisfied its duty of care by promptly notifying the police of the criminal assault. The circuit court granted Livho's motion for summary disposition.

On appeal, plaintiff argues that the circuit court should have concluded that the promoter's security guards acted as Livho's agents, and Livho owed plaintiff a duty of care as an invitee to protect him from the guards' tortious conduct.

We review "de novo a circuit court's summary disposition ruling." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). A motion filed under MCR 2.116(C)(10) tests

-1-

whether a claim has adequate factual support. *Id.* "[T]his Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

"Whether a defendant owes a plaintiff a duty of care is a question of law decided by the circuit court," which we consider de novo. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 659; 822 NW2d 190 (2012). "While ordinarily a jury determines what constitutes the breach of a duty to provide reasonable care under the circumstances, in cases in which overriding public policy concerns arise, the court determines what constitutes reasonable care." *Bailey v Schaaf*, 494 Mich 595, 604; 835 NW2d 413 (2013) (citation and quotation marks omitted).

We conclude that the circuit court properly granted Livho summary disposition because as a matter of law, Livho satisfied its limited duty of care to plaintiff. In *Bailey*, 494 Mich at 604, our Supreme Court summarized that although no person owes another an obligation to assist or protect the other person, the common law imposes "a duty of care when a special relationship exists." The Supreme Court noted that such a special relationship exists between owners and occupiers of land and their invitees, between a landlord and its tenants and their invitees, and between a merchant and its invitees. *Id.* The Court explained:

> In keeping with the traditional common-law understanding that landlords and merchants share a similar level of control over common areas that are open to their tenants and other invitees, and thus assume the same duty of reasonable care with regard to those common areas, we hold that a landlord's duty regarding criminal acts of third parties is limited to and coextensive with the duty articulated in [*MacDonald v PKT, Inc*, 464 Mich 322; 628 NW2d 33 (2001)]. Thus, a landlord [or other invitor] has a duty to respond by reasonably expediting police involvement where it is given notice of a specific situation occurring on the premises that would cause a reasonable person to recognize a risk of imminent harm to an identifiable invitee.

> * * *

> . . . Because of the unpredictability and irrationality of criminal activity, this assumption should continue until a specific situation occurs on the premises that would cause a reasonable person to recognize a risk of imminent harm to an identifiable tenant or invitee. Only when given notice of such a situation is a duty imposed on a landlord [or other invitor]. *Notice* is critical to [the] determination whether a landlord's [or other invitor's] duty is triggered; without notice that alerts the landlord [or other invitor] to a risk of imminent harm, it may continue to presume that individuals on the premises will not violate the criminal law. [*Bailey*, 494 Mich at 614-615 (citations, brackets, and quotation marks omitted; emphasis in original).]

Plaintiff learned of the Champagne Explosion event at the Radisson Hotel in Livonia on December 31, 2010, through some of the event's promoters. Plaintiff arrived at the event at approximately 11:00 p.m. on December 31, 2010, and went directly to an event suite that he and several friends had reserved.

Plaintiff denied knowing whether the hotel or the event promoters supplied the security guards for the event but agreed that the security guards wore black t-shirts that read, "Security," in white lettering. Between 45 minutes and an hour after his arrival, plaintiff noticed a woman who did not belong to his group smoking a cigarette in the area of his suite. He also immediately saw three security guards standing near the suite. The security guards informed everyone in the suite that they had to leave because "somebody was smoking." The guards ignored plaintiff's pleas to briefly discuss the matter. One of the security guards grabbed plaintiff's shirt, while other guards grabbed other nearby guests. Plaintiff resisted. When the guard released his shirt, plaintiff turned around and next remembered feeling a security guard strike the back of his head with a heavy glass object. Plaintiff's friends helped lead him out a side door to a parking lot. On arriving in the parking lot, plaintiff saw security guards, including the guard who had struck him, and a police officer. One of the guards used a bottle to strike plaintiff's head "again in front of the police officer." Plaintiff and the security guards grabbed each other; the police officer yelled at them to freeze; the officer used his Taser on one of the security guards; the officer handcuffed one of the security guards, and moments later, the officer helped plaintiff inside an ambulance.

Mark Slater, the first police officer to arrive at the hotel, parked his police car near a hotel exit and waited for backup to arrive because of the large unruly crowd inside. Salter saw two people leave the hotel through the door nearest him. Then several other people, including plaintiff, another injured person, and some of plaintiff's friends came outside. Slater heard yelling, jumped out of his car, and approached them.

Anthony Smith attested that in December 2010 and January 2011, he worked as the hotel's director of operations. According to Smith, in October 2010, the hotel entered into an agreement with JEM, pursuant to which the hotel agreed to host the Champagne Explosion event on December 31, 2010.[1] The hotel agreed to provide food and beverages and a block of hotel rooms for the attendees. Smith stated that the hotel maintained "a small security staff," and for large events such as the Champagne Explosion, it "required the promoter of the event to retain additional security." At the Champagne Explosion event on December 31, 2010, security guards hired by JEM were present and responsible for watching the attendees. JEM's security personnel wore all black clothing, with the word "Security" on the back of their shirts.

Joseph Cleveland, a hotel security officer, stated that on the night of December 31, 2010, he saw that the Champagne Explosion promoter "had hired approximately 50 security guards to handle the security for the party," and the promoter's security personnel "wore all black with the word 'Security' on the back of their shirts." During the Champagne Explosion, Cleveland

---

[1] In relevant part, the agreement provided that the hotel "may, in its sole discretion, require [JEM] to take certain security measures in light of the size or nature of the function, which may include the requirement to hire sufficient security personnel from a reputable agency."

remembered a hotel food worker informing him that some attendees were smoking, so Cleveland asked the promoter's security personnel to request that the smokers leave. After the promoter's security personnel asked the smokers to leave, a fight broke out. According to Cleveland, he "went straight to the front desk and told the clerk to call the police," and the "clerk immediately complied."

The circuit court erred in finding that Livho owed plaintiff no duty because no special relationship existed. When plaintiff arrived at the hotel for the Champagne Explosion sponsored by JEM, plaintiff was an invitee on property owned or operated by Livho, which therefore owed plaintiff a duty of care. *Bailey*, 494 Mich at 604. But the circuit court properly granted Livho summary disposition because the evidence demonstrated that Livho satisfied its limited duty of care to act in the face of criminal activity directed toward plaintiff. *Fisher v Blankenship*, 286 Mich App 54, 70; 777 NW2d 469 (2009) (this Court will affirm where the trial court came to the right result even if for the wrong reason). Plaintiff's unrebutted testimony established that security guards JEM hired assaulted him with bottles. Livho thus owed plaintiff the limited duty to inform the police on learning of the security guards' criminal activity. The submitted evidence established without dispute that after learning of the assault, Cleveland told another hotel worker to call the police, who then promptly arrived at the hotel.

Even assuming that an agency relationship existed between Livho and the JEM security guards, we conclude that plaintiff has not identified any authority suggesting that Livho owed plaintiff a broader duty than to protect him from criminal acts other than Livho's promptly notifying the police. *Bailey*, 494 Mich at 614-615. Alternatively stated, because the unrebutted facts reflect plaintiff was the victim of criminal conduct in the hotel, even assuming that JEM's security guards were Livho's agents, Livho satisfied its limited duty of care to plaintiff: its duty was to promptly notify the police after learning about the assault. *Id*.; see also *MacDonald*, 464 Mich at 337-338 (explaining that "even where a merchant voluntarily takes safety precautions in an effort to prevent criminal activity," a party cannot maintain a lawsuit "on the theory that the safety measures are less effective than they could or should have been") (citation and quotation marks omitted).

We affirm. As the prevailing party, defendant may tax costs pursuant to MCR 7.219.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Colleen A. O'Brien

-4-