DEUTSCHE BANK TRUST COMPANY AMERICAS
v SPOT REALTY, INC

Docket No. 255659. Submitted October 18, 2005, at Detroit. Decided December 15, 2005. Approved for publication February 2, 2006, at 9:05 a.m.

Deutsche Bank Trust Company Americas brought an action to quiet title in the Wayne Circuit Court against Spot Realty, Inc. The action related to residential property previously owned by James and Terrye Robinson. The Robinsons had executed a mortgage on the property in favor of Decision One Mortgage, and the plaintiff subsequently acquired Decision One's interest. Proceeds from the Decision One loan had been used to pay the balance on a line of credit secured by an earlier future advance mortgage on the property held by Bank One, but the Robinsons never authorized closing the line of credit, and Bank One never discharged the future advance mortgage. James Robinson had subsequently obtained further advances from the line of credit, after which Bank One foreclosed on the property. The defendant had acquired a sheriff's deed for the property at the foreclosure sale, and the plaintiff filed this action after the redemption period related to that sale expired. Both parties to this action moved for summary disposition. The court, Louis F. Simmons, Jr., J., granted the defendant's motion, concluding that the defendant had succeeded to Bank One's senior interest in a valid and undischarged mortgage that Bank One had no duty to discharge. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court did not err by granting summary disposition to the defendant. Under MCL 565.902, the priority of each advance made in connection with a future advance mortgage relates back to the date the mortgage was recorded. Accordingly, even the future advances made to the Robinsons after they executed the Decision One mortgage are senior to the Decision One mortgage. Because the plaintiff was the assignee of Decision One's junior mortgage, its interest in the property was extinguished when the redemption period ended.

2. The trial court incorrectly determined that MCL 565.41, which concerns the discharge of mortgages, did not apply to future advance mortgages. Nonetheless, Bank One was not required to discharge the future advance mortgage when it received full payment of the balance on the line of credit. A future advance mortgage is not paid or otherwise satisfied, as required by that statute, unless the debt is paid off and future advances are terminated. Bank One notified Decision One that the line of credit would be closed and the mortgage would be discharged only with the Robinsons' written authorization, which Decision One and the plaintiff failed to secure.

3. The plaintiff was not entitled to priority under the doctrine of equitable subrogation. That doctrine was never intended to protect sophisticated financial institutions that can choose the terms of their credit agreements. Decision One was under no legal or equitable duty to undertake the refinancing requested by the Robinsons. As such, it had the status of a mere volunteer to which the doctrine does not apply.

4. The plaintiff was not entitled under equity principles to an extension of the statutory redemption period. Bank One directly notified the plaintiff's predecessor of the foreclosure sale and strictly complied with the statutes regarding foreclosure by advertisement. Moreover, the plaintiff was on notice that the property remained encumbered by the future advance mortgage.

Affirmed.

1. MORTGAGES — FUTURE ADVANCE MORTGAGES — PRIORITY OF MORTGAGES.

The priority of each advance made in connection with a future advance mortgage relates back to the date the mortgage was recorded; a future advance made pursuant to a future advance mortgage after the mortgagor has executed and recorded a later mortgage is senior to that later mortgage if the prior future advance mortgage has not been discharged (MCL 565.902).

2. MORTGAGES — FUTURE ADVANCE MORTGAGES — DISCHARGE OF MORTGAGES.

A mortgagee, or the mortgagee's personal representative, successor, or assign, must prepare and file a discharge of a future advance mortgage within 90 days after that mortgage has been paid or otherwise satisfied and discharged, but a future advance mortgage is not paid or otherwise satisfied unless the debt is paid off and future advances are terminated (MCL 565.41, 565.901 *et seq.*).

*May, Simpson & Strote* (by *Thomas C. Simpson* and *Marilynn K. Smyth*) for the plaintiff.

*Nedelman Pawlak, PLLC* (by *Gerald A. Pawlak*), for the defendant.

Before: COOPER, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM. In this action to quiet title, plaintiff Deutsche Bank Trust Company Americas (Deutsche Bank) appeals as of right from the trial court's order denying its motion for summary disposition under MCR 2.116(C)(10) and granting defendant Spot Realty, Inc.'s cross-motion for summary disposition. We affirm.

## I. FACTUAL BACKGROUND

On November 6, 1997, James and Terrye Robinson borrowed $284,000 from NF Investments, secured by the senior mortgage (Mortgage A) on their home.[1] On April 1, 1998, the Robinsons also opened a one-year-term small business line of credit for $40,000 with NBD Bank, secured in part by a subordinate future advance mortgage[2] (Mortgage B) on their home.[3] Mortgage B secured a revolving line of credit, which permitted the

---

[1] The property was also encumbered by a mortgage executed in 1996. However, that mortgage is not at issue in this appeal.

[2] MCL 565.901(1) defines the terms "future advance" and "future advance mortgage" as follows:

> (a) "Future advance" means an indebtedness or other obligation that is secured by a mortgage and arises or is incurred after the mortgage has been recorded, whether or not the future advance was obligatory or optional on the part of the mortgagee.

> (b) "Future advance mortgage" means a mortgage that secures a future advance and is recorded either prior to or after the effective date of this act. . . .

[3] The line of credit was also secured by the assets of Mr. Robinson's business, JS Airport, Inc.

Robinsons to draw amounts up to the credit limit throughout the term of the loan. The Credit Line Agreement contained the following cancellation provision:

> You may cancel your Line at any time by giving NBD *written* notice of cancellation. . . . This agreement will remain in full force and effect if the Line is cancelled, except NBD will have no obligation to extend credit, and you agree to pay NBD the Obligations when due. . . . [Emphasis added.]

The agreement also provided that NBD Bank could extend or renew the term of the loan to allow for advances beyond the stated expiration date.

In March of 2001, the Robinsons refinanced their property for $424,000 with Decision One Mortgage (Decision One), and executed a mortgage in its favor (Mortgage C).[4] The proceeds from this loan were intended to pay off and discharge the mortgages with both NF Investments and Bank One, which had since acquired NBD Bank, making Mortgage C the senior security interest. NF Investments did, in fact, discharge Mortgage A following this transaction. However, the transaction with Bank One did not go as planned.

Decision One requested the payoff amount on the line of credit from Bank One. In its response, Bank One notified Decision One that it required the Robinsons' written authorization to close the account. Decision One subsequently paid the balance remaining on the line of credit, $42,230.26. However, Decision One never provided Bank One with the requested authorization to close the credit line. Rather, Decision One notified Bank One that it was required to discharge Mortgage B

---

[4] It appears from the record that the refinancing transaction was performed by a mortgage broker, Creative Capital, Inc. For ease of reference, we will refer only to Decision One.

within 90 days, pursuant to MCL 565.41, and instructed Bank One to forward the discharge document for Decision One to record. Bank One never discharged Mortgage B and, therefore, never forwarded the requested document. Thereafter, Bank One allowed Mr. Robinson to obtain further advances from the line of credit. Mr. Robinson subsequently defaulted on the Bank One loan with an outstanding balance of $39,050.

On July 30, 2002, Deutsche Bank acquired Decision One's interest in the Robinsons' property.[5] One month later, Bank One foreclosed on the property. Bank One notified Decision One directly of the impending foreclosure sale and also followed the procedures for foreclosure by advertisement.[6] Spot Realty prevailed at the foreclosure sale with a high bid of $50,000, and acquired a sheriff's deed to the property on August 29, 2002. Ten days after the expiration of the six-month redemption period,[7] Deutsche Bank filed the instant action to quiet title.

At the close of discovery, both parties moved for summary disposition pursuant to MCR 2.116(C)(10). The trial court granted the motion in Spot Realty's favor, finding that it succeeded to Bank One's senior

[5] It is unclear from the record whether Decision One assigned its interest to Deutsche Bank, or whether Deutsche Bank claimed title through a sheriff's deed following a foreclosure. For purposes of the current action, however, Spot Realty conceded that Deutsche Bank acquired any interest in the Robinsons' property that Decision One formerly possessed.

[6] MCL 600.3201 *et seq.*

[7] MCL 600.3140. We recognize that the statutory redemption periods in a foreclosure by advertisement are delineated in MCL 600.3240. However, these parties, two sophisticated financial institutions, proceeded under MCL 600.3140. The trial court made its ruling under that subsection and neither party has ever challenged the propriety of proceeding under MCL 600.3140. The parties agreed to proceed under MCL 600.3140, and we have reviewed the issues under that statute.

interest in the valid and undischarged Mortgage B. The court determined that MCL 565.41 was inapplicable to future advance mortgages and, therefore, Bank One had no duty to discharge its security interest. The court also rejected Deutsche Bank's claim that it was entitled to ascend to the senior priority of Mortgage A under the doctrine of equitable subrogation, and, sua sponte, found that Deutsche Bank was not entitled to an equitable extension of the statutory redemption period.

## II. STANDARD OF REVIEW

We review equitable actions to quiet title de novo.[8] We also review a trial court's determination regarding a motion for summary disposition de novo.[9] A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim.[10] "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in [the] light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists."[11] Summary disposition is appropriate only if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[12] Finally, we review any underlying issues of statutory construction de novo.[13]

---

[8] *Burkhardt v Bailey*, 260 Mich App 636, 646; 680 NW2d 453 (2004).

[9] *MacDonald v PKT, Inc*, 464 Mich 322, 332; 628 NW2d 33 (2001).

[10] *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 397; 605 NW2d 685 (1999).

[11] *Singer v American States Ins*, 245 Mich App 370, 374; 631 NW2d 34 (2001).

[12] *MacDonald, supra* at 332.

[13] *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

### III. PRIORITY OF MORTGAGES

Deutsche Bank contends that the trial court should have quieted title in its favor on both legal and equitable grounds. Deutsche Bank contends that Mortgage B was defective and, therefore, voidable. It also argues that Bank One improperly failed to discharge that mortgage upon full payment. In the alternative, Deutsche Bank contends that it was entitled to be equitably subrogated to the senior position of Mortgage A, as the proceeds from Mortgage C were used to pay off and discharge that interest. We disagree.

Pursuant to MCL 565.902, the priority of all advances made in connection with a future advance mortgage relates back to the date the mortgage was recorded. Accordingly, even the future advances made to the Robinsons *after* they executed and recorded Mortgage C are senior to that interest. As assignee of Decision One's junior Mortgage C, Deutsche Bank's interest in the Robinsons' property was extinguished at the end of the statutory six-month redemption period.[14] Deutsche Bank raised several challenges to the validity of Mortgage B in an attempt to nullify that senior interest. We agree with the trial court that those challenges lack merit. Deutsche Bank first contends that the future advance mortgage and credit agreement incorrectly identified Mr. Robinson's corporation as the debtor. However, it is clear from the loan documents that the corporation only guaranteed the loan. Deutsche Bank also contends that any advances made following the stated expiration or maturity date of the line of credit did not relate back to the date of recording. Yet, the loan documents clearly indicate that the term of the

---

[14] MCL 600.3236. See also *Burkhardt, supra* at 652-653 ("An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses.").

line of credit could be extended and renewed. Furthermore, Decision One was on notice that the Robinsons could potentially take subsequent advances, as it did not secure their authorization to close the line of credit.

While we disagree with the trial court's determination that MCL 565.41 is inapplicable to future advance mortgages, we reject Deutsche Bank's contention that Bank One was required to discharge Mortgage B upon receiving full payment. The statute provided that "[a] mortgagee . . . within 90 days after a mortgage *has been paid or otherwise satisfied* and discharged, shall prepare and file a discharge thereof . . . ."[15] A future advance mortgage is not "paid or otherwise satisfied" unless the debt is paid off and future advances are terminated. Bank One notified Decision One that the line of credit would be closed and Mortgage B discharged *only* upon the Robinsons' written authorization. Deutsche Bank conceded that its predecessor erred in failing to secure that authorization. Moreover, Decision One knew that the line of credit had not been closed, as Bank One never forwarded the requested discharge documents. As Decision One failed to "otherwise satisfy" Mortgage B, Bank One was under no statutory duty to discharge its interest.

In the alternative, Deutsche Bank contends that its interest should take priority under the doctrine of equitable subrogation, as Bank One's failure to discharge Mortgage B prevented Decision One from taking its intended senior security interest. However, the doctrine of equitable subrogation was never intended for the protection of sophisticated financial institutions that can choose the terms of their credit agreements.

---

[15] MCL 565.41 (emphasis added). The statute was subsequently amended in 2004; however, the emphasized language remained unchanged.

Such lenders are "mere volunteers" and may not benefit from this equitable remedy under Michigan law.

This Court described the doctrine of equitable subrogation in its recent decision in *Washington Mut Bank, FA v ShoreBank Corp*:

> Subrogation comes in two forms described by the Supreme Court in *French v Grand Beach Co* [239 Mich 575, 580-581; 215 NW 13 (1927)] as follows:

> "The doctrine of subrogation rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect. This doctrine is sometimes spoken of as 'legal subrogation,' and has long been applied by courts of equity. *Stroh* v. *O'Hearn*, 176 Mich. 164, 177 [142 NW 865 (1913)]. There is also what is known as 'conventional subrogation.' It arises from an agreement between the debtor and a third person whereby the latter, in consideration that the security of the creditor and all his rights thereunder be vested in him, agrees to make payment of the debt in order to relieve the debtor from a sacrifice of his property due to an enforced sale thereof. It is wholly independent of any interest in the property which the lender may have to protect. It does not, however, inure to a mere volunteer who has no equities which appeal to the conscience of the court."

> In *Stroh v O'Hearn* [*supra* at 177], the Court noted that the equitable principle of subrogation is not available to volunteers:

> "Subrogation is an equitable doctrine depending upon no contract or privity, and proper to apply whenever persons other than mere volunteers pay a debt or demand which in equity and good conscience should have been satisfied by another. It is proper in all cases to allow it where injustice would follow its denial, and in allowing it all injustice should be guarded against so far as possible."

The principle that subrogation is not available to a mere volunteer was again applied in *Lentz v Stoflet* [280 Mich 446, 451; 273 NW 763 (1937)]. Indeed, even in *Walker v Bates* [244 Mich 582, 587; 222 NW 209 (1928)], a case that cannot be reconciled with *Lentz*, the Court acknowledged that subrogation is not available to a mere volunteer. See also *Hartford Accident & Indemnity Co v Used Car Factory, Inc* [461 Mich 210, 215-216; 600 NW2d 630 (1999)] and *Beaty v Hertzberg & Golden, PC* [456 Mich 247, 255; 571 NW2d 716 (1997) (for a third party to avoid being classified a mere volunteer, the damage must have been incurred as the result of the third party's fulfillment of a legal or equitable duty owed to the client)].[16]

Pursuant to long-standing precedent, Decision One was clearly a "mere volunteer." "[T]he doctrine of equitable subrogation does not allow a new mortgagee to take the priority of the older mortgagee merely because the proceeds of the new mortgage were used to pay off the indebtedness secured by the old mortgage."[17] The mere fact that a borrower promises to repay the new mortgagee does not remove the volunteer status.[18] The proceeds from Mortgage C were used to pay off the indebtedness secured by Mortgage A and Mortgage B. However, Decision One was under no "legal or equitable duty" to the Robinsons to undertake the refinancing. Decision One voluntarily entered into this transaction, and Deutsche Bank could only succeed to the position of a "mere volunteer."

Furthermore, it is well established that "equity cannot be used to avoid the dictates of a statute, absent

---

[16] *Washington Mut Bank, FA v ShoreBank Corp*, 267 Mich App 111, 113-114; 703 NW2d 486 (2005).

[17] *Id.* at 119-120.

[18] *Id.* at 124-125, citing *Smith v Sprague*, 244 Mich 577; 222 NW 207 (1928).

fraud, accident, or mistake."[19] However, Deutsche Bank has not alleged any wrongdoing on the part of Bank One to support subrogation on these grounds. As previously noted, Bank One was entitled under the credit agreement to extend the term of the line of credit and Deutsche Bank failed to take the required actions to close and terminate the account. Accordingly, Deutsche Bank failed to establish that its security interest was entitled to priority under either legal or equitable principles.

### IV. EQUITABLE EXTENSION OF REDEMPTION PERIOD

Deutsche Bank also asserts that it was entitled, as a matter of equity, to an extension of the statutory redemption period. Deutsche Bank contends that it was prevented from redeeming the property, as it did not have actual notice of Bank One's foreclosure sale—or that Bank One had failed to discharge Mortgage B. We again disagree.

As the successor-in-interest to Decision One's junior mortgage, Deutsche Bank had the right to redeem the property within the statutory period.[20] Contrary to Deutsche Bank's allegation, however, Bank One's failure to directly notify it of the foreclosure sale does not warrant equitable relief. Deutsche Bank acquired Decision One's interest only 30 days before the scheduled foreclosure sale and presented no evidence that this transfer had been recorded to place Bank One on notice. Bank One did directly notify Decision One of the foreclosure sale and published notices in the *Detroit Legal News* for four consecutive weeks in compliance

---

[19] *Burkhardt, supra* at 659, citing *Stokes v Millen Roofing Co*, 466 Mich 660, 671-672; 649 NW2d 371 (2002), and *Freeman v Wozniak*, 241 Mich App 633, 637-638; 617 NW2d 46 (2000).

[20] MCL 600.3140.

with MCL 600.3208. When a statute "specifies the requirements for redemption, [there is] no room for equitable considerations absent fraud, accident, or mistake."[21] Bank One strictly complied with the notice requirements for foreclosure by advertisement, and Deutsche Bank cannot show that its failure to receive direct notice was caused by any fault of Bank One.[22] Furthermore, Deutsche Bank was on notice that the property was still encumbered by Mortgage B, as neither its predecessor-in-interest nor Bank One had recorded a discharge. Accordingly, the trial court properly determined that Deutsche Bank was not entitled to an extended period in which to redeem the property.

Affirmed.

---

[21] *Senters v Ottawa Savings Bank, FSB*, 443 Mich 45, 55; 503 NW2d 639 (1993).

[22] *Freeman, supra* at 637-638.