*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAMAR BASKIN,

        Plaintiff-Appellant/Cross-Appellee,

v

ALI MAHMOOD-MUSAID NAMER,

        Defendant-Appellee/Cross-Appellant,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

UNPUBLISHED
October 27, 2022

No. 358176
Wayne Circuit Court
LC No. 19-016236-NI

Before: LETICA, P.J., and SERVITTO and HOOD, JJ.

PER CURIAM.

In this third-party no-fault case, plaintiff appeals as of right the order granting summary disposition to defendant.[1] On appeal, plaintiff argues the trial court erred by granting summary disposition to defendant, because plaintiff satisfied the threshold requirement of proving an objectively manifested impairment, and the trial court improperly conflated this requirement with the issue of causation, which is a question of fact for a jury. Defendant cross-appeals the trial court's denial of summary disposition on the basis of plaintiff's comparative fault. Defendant argues the trial court erred by determining an issue of fact existed regarding whether plaintiff was more than 50% at fault for the accident, because MCL 257.402(a) establishes a presumption of

---

[1] Because of State Farm Mutual Automobile Insurance Company's limited involvement in the case, and lack of involvement on appeal, defendant, Ali Mahmood-Musaid Namer, will be referred to as "defendant," and State Farm will be referred to as "State Farm."

negligence when a driver rear-ends another vehicle, and plaintiff failed to rebut this presumption. We reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a motor vehicle accident, in December 2016, on the M-10 Lodge freeway. Plaintiff, after entering the freeway from the right-hand side, merged into the middle lane, and then the left lane, checking his rearview mirror in the process. The parties dispute whether defendant's vehicle was having mechanical problems, whether defendant was slowing to a stop, or already stopped, and whether defendant was in the left lane or on the shoulder when the accident occurred. The parties also disagree whether defendant's hazard lights were on. Plaintiff did not see defendant's vehicle, and, after driving in the left lane for a few seconds, rear-ended defendant's vehicle.

Plaintiff's medical records from before the accident indicate plaintiff complained of chronic back pain, and was diagnosed with ulcerative colitis and anemia, in May 2013. Plaintiff continued to complain of back pain and abdominal pain in June 2016. Plaintiff's medical records included various diagnoses, including chronic neck and lower back pain. Plaintiff's emergency room records from immediately after the accident indicated acute and mild fractures to plaintiff's face, and degenerative changes to plaintiff's head, spine, and chest, but no fractures. Plaintiff was unable to work as a commercial truck driver because of his injuries. Post accident medical records show plaintiff suffered a hernia, which required surgery, suffered a concussion, and was suffering from postconcussive syndrome and memory loss.

Two independent medical examinations (IME)[2] were prepared. The first IME concluded plaintiff "incurred soft tissue strain injuries to the cervical and lumbar spine as a result of the motor vehicle accident[,]" and determined plaintiff reached maximum medical improvement from the injuries stemming from the accident. The IME noted plaintiff complained of memory problems, but deferred to neurologists. The IME opined plaintiff "reached pre-injury status[,]" and did not require further treatment.

The second IME noted plaintiff's preexisting conditions from his May 2013 medical records, but not the June 2016 medical records. The IME concluded plaintiff:

---

[2] We recognize the term "Independent Medical Examination" may be inaccurate:

> Although IMEs are commonly referred to as "independent medical examinations," that appellation is a euphemistic term of art. In reality, and to a great extent central to this matter, an IME involves obtaining a second opinion from a doctor who is entirely selected and paid for by an insurance company, rendering the "independence" of the examination somewhat questionable. [*Micheli v Mich Auto Ins Placement Facility*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356559); slip op at 2 n 3.]

For clarity and consistency, this opinion will refer to these reports as IMEs.

[D]id have a history of chronic lower back pain, but he developed significant symptoms referable to the cervical spine, as well as an aggravation of his longstanding lower back pain following [the] accident; however, more importantly, he did sustain craniofacial trauma in [the] accident, . . . [the records of which] provide a basis for him to have postconcussive syndrome.

The second IME asserted: "The postconcussive syndrome/mild [traumatic brain injury] and cervical symptoms were caused by [the] accident. The lower back pain represents an aggravation of a preexisting condition." Plaintiff was able to return to work after a 15-month absence.

Plaintiff filed suit, seeking third-party benefits from defendant, and uninsured and underinsured motorist coverage from State Farm Mutual Automobile Insurance Company (State Farm).[3] At his deposition, plaintiff confirmed he returned to work as a commercial truck driver and had no physical restrictions at his job. Plaintiff had pain in his back, head, and neck after the accident. Plaintiff agreed he had preexisting lower back pain before the accident, but asserted the previous treatments were really for stomach pain more than back pain.

Plaintiff, describing the injuries he sustained from the accident, explained his head went through the windshield, which resulted in migraine headaches, which he did not suffer before the accident. Plaintiff attributed the hernia to the accident. Describing the facts leading to the accident, plaintiff stated:

> I was leaving or coming to get to my job. I got on the Lodge. Once I got on the Lodge I started driving. As I'm driving I'm merging over from lane to lane to get in the far lane to go to my job. As I switched over—I got on the freeway then I switched over to the middle lane. Then I'm looking in my rearview mirror making sure ain't nobody coming. I move over to the far left lane, and as I'm driving before I realize it I noticed that the car or truck in front of me wasn't moving. And before then at that point it was too late. It wasn't no hazards on, it wasn't nothing. It was like when I moved over in that lane a few seconds later I was running into the back of them because the truck was left on the freeway.

Plaintiff testified he was probably driving the speed limit of 55 miles per hour when the accident occurred, and, while he tried to brake once he saw defendant's vehicle, it was too late. Plaintiff explained he could no longer fully participate in sports, bend, or exercise, and could not travel long distances, because his memory impairment made him forget where he was going while driving. These memory lapses occurred while he was working, and were scary.

Defendant moved for summary disposition under MCR 2.116(C)(10), arguing plaintiff's claim was barred by MCL 500.3135, because plaintiff was presumed negligent under MCL 257.402(a), and was more than 50% at fault. Defendant also argued he was entitled to summary disposition because plaintiff did not submit proof he suffered an objectively manifested

---

[3] The parties stipulated to State Farm's dismissal without prejudice in December 2020. Because State Farm was dismissed, and none of State Farm's claims below are at issue on appeal, State Farm's actions in the trial court proceedings before its dismissal need not be addressed.

impairment. In response, plaintiff asserted the existence of a sudden emergency, because he only saw defendant's vehicle seconds after entering the left lane, and defendant's vehicle did not have its hazard lights on. Plaintiff argued he was entitled to summary disposition under MCR 2.116(I)(2), because defendant failed to appear for his deposition, and there was therefore no testimony or evidence to refute plaintiff's account of the accident. Regarding defendant's comparative fault argument, plaintiff noted defendant, by stopping his vehicle on the freeway, violated various traffic laws, and the violations, at a minimum, created a genuine question of material fact regarding the extent of each party's negligence. Plaintiff also argued there was no dispute plaintiff suffered a threshold injury in light of his medical records and the IMEs. Defendant disputed plaintiff's sudden-emergency defense, because plaintiff's actions, over which he had control, caused the accident. Plaintiff's failure to look in front of him when he merged lanes did not constitute a sudden emergency, particularly considering all the other vehicles on the freeway were able to see defendant's vehicle and avoid a collision. Defendant also argued plaintiff failed to produce any evidence his injuries were causally related to the accident.

The trial court determined a genuine issue of material fact existed regarding whether plaintiff was more than 50% negligent, because there was a dispute regarding where defendant's vehicle was stopped, and thus denied defendant's motion on the basis of comparative fault. Regarding defendant's other claim, the trial court noted:

> The second argument that defendant makes is that plaintiff has failed to produce evidence to establish a causal connection, between the motor vehicle accident and his alleged injuries. . . . A review of the report from Henry Ford Hospital that was done the day of the accident, there were a number of tests that were taken and although the tests indicated that there [were] some back issues, there is nothing in those reports that connected to the motor vehicle accident. The only injury that was connected to the motor vehicle accident was a fracture of plaintiff's jaw and, according to the medical records, as well as the IME doctor, it indicates that, with regards to the upper jaw fracture, the doctor recommended one week of nasal precaution and antibiotics.

The trial court determined there was no evidence in the record establishing the accident exacerbated plaintiff's back problems, and, therefore, there was no causal connection between plaintiff's alleged back injuries and the accident. Therefore, the trial court concluded, plaintiff "failed to demonstrate that he suffered an objectively manifested impairment," which warranted granting defendant's motion for summary disposition on that ground.

## II. ANALYSIS

Plaintiff argues the trial court erred by granting summary disposition to defendant on the basis of plaintiff's failure to establish a threshold injury. Defendant argues the trial court erred by denying his motion for summary disposition regarding whether plaintiff was more than 50% negligent.

"We review de novo decisions on summary disposition motions." *White v Taylor Distrib Co, Inc*, 482 Mich 136, 139; 753 NW2d 591 (2008) (quotation marks and citation omitted). "A motion under [MCR 2.116(C)(10)] tests the factual sufficiency of the complaint." *Candler v Farm*

*Bureau Mut Ins Co of Mich*, 321 Mich App 772, 777; 910 NW2d 666 (2017) (quotation marks and citation omitted). "A court reviewing a motion under MCR 2.116(C)(10) must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *White*, 482 Mich at 139 (quotation marks and citation omitted).

> Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*West v Gen Motors Co*, 469 Mich 177, 183; 665 NW2d 468 (2003).]

"[A] trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Issues of statutory construction are reviewed de novo. *Deutsche Bank Trust Co Americas v Spot Realty, Inc*, 269 Mich App 607, 612; 714 NW2d 409 (2005).

### A. OBJECTIVELY MANIFESTED IMPAIRMENT AND CAUSATION

The version of MCL 500.3135(1) in effect at the time of the accident stated: "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1), as amended by 2012 PA 158. A serious impairment of bodily function is an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life. MCL 500.3135(5).

Plaintiff did not allege he suffered death or permanent serious disfigurement. Therefore, to be able to recover from defendant, plaintiff needed to prove he suffered: (1) an objectively manifested impairment, (2) of an important body function, which (3) affects the person's general ability to lead their normal life. *Id.* The trial court found plaintiff did not establish the first element, but made no findings on the other two; only the first element is at issue on appeal.

Our Supreme Court has held an objectively manifested impairment "is an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function. In other words, an objectively manifested impairment is commonly understood as one observable or perceivable from actual symptoms or conditions." *McCormick v Carrier*, 487 Mich 180, 196; 795 NW2d 517 (2010) (quotation marks omitted). "[W]hen considering an impairment, the focus is not on the injuries themselves, but how the injuries affected a particular body function." *Id.* at 197 (quotation marks and citation omitted).

"The serious impairment analysis is inherently fact- and circumstance-specific and must be conducted on a case-by-case basis." *Id.* at 215. "Although mere subjective complaints of pain

-5-

and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested." *Patrick*, 322 Mich App at 607. "Medical testimony is generally, but not always, required to make this showing." *Id.*

> [T]he issue of whether a serious impairment of body function has been incurred is a question of law to be decided by the court only if (1) "[t]here is no factual dispute concerning the nature and extent of the person's injuries" or (2) "[t]here is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function[.]" MCL 500.3135(2)(a). [*Patrick*, 322 Mich App at 607-608 (second and third alterations in original).]

"When there is a genuine issue of material fact regarding the nature and extent of a person's injuries, the threshold question of whether there was a serious impairment of body function is for the jury and may not be decided as a matter of law." *Id.* at 608.

The parties disagree regarding the nature and extent of plaintiff's injuries. Plaintiff argues his injuries are either new or aggravated by the accident, while defendant contends all plaintiff's injuries were preexisting and plaintiff provided no proof the accident contributed to them. To support (and contradict, on the part of defendant) plaintiff's claim of an objectively manifested impairment, the parties provided the trial court with plaintiff's medical records from before and after the accident. The records and diagnoses include diagnoses of postconcussive syndrome, traumatic brain injury, and a conclusion the accident aggravated plaintiff's preexisting lower back pain. The medical records and diagnoses also support plaintiff's subjective complaints of back pain, neck pain, and memory loss.

Defendant argues plaintiff failed to show the accident caused his injuries, because they were preexisting. Notably, however, review of plaintiff's earlier medical records shows no diagnoses for postconcussive syndrome, or traumatic brain injury. Defendant fails to address these injuries on appeal, and the trial court failed to address them when it granted summary disposition to defendant, choosing to focus only on plaintiff's fractured jaw.

Defendant further contends the IMEs support his contention of plaintiff having only preexisting injuries. The first IME does assert plaintiff's injuries from the accident were limited to "soft tissue strain injuries to the cervical and lumbar spine." However, the second IME disagreed. The second IME concluded the accident resulted in postconcussive syndrome, traumatic brain injury, and aggravation of plaintiff's preexisting lower back pain. While defendant contends the second IME is unreliable because the doctor performing the IME did not have access to plaintiff's medical records from June 2016, the second IME doctor had access to, and discussed, plaintiff's May 2013 medical records, which also noted his preexisting conditions. Whether the June 2016 medical records would change the IME's evaluation is a question of fact on which the parties disagree. Because it is plausible the June 2016 medical records may change the evaluation, but is also plausible they may not, this creates a genuine issue of material fact for the jury.

In sum, while there may be an issue of fact whether the accident exacerbated plaintiff's back problems, there is no genuine issue of material fact, considering the record as it stood when

the trial court granted summary disposition to defendant, the accident caused plaintiff's objectively manifested postconcussive syndrome and traumatic brain injury.

We also note, the trial court's determination plaintiff failed to establish an objectively manifested impairment seemed to rest entirely on its determination plaintiff failed to establish a causal link between the accident and his injuries. Causation is an issue distinct from the threshold injury analysis, and it appears the trial court conflated the two requirements when making its decision. However, it is worth considering the issue of causation, because, if the trial court was correct that plaintiff failed to establish causation, the trial court's grant of summary disposition to defendant would be harmless error. "A trial court's error is harmless if, based on review of the entire record, it is more probable than not that the error was not outcome determinative; if the probability runs in the other direction, then it is reversible error." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 717; 922 NW2d 662 (2018).

Again, the second IME unequivocally stated plaintiff's injuries were either caused by, or exacerbated by, the accident. While the first IME disagrees, this disagreement creates a genuine issue of material fact regarding causation that is reserved for the jury. The trial court impermissibly weighed the evidence by failing to consider the second IME to the same extent as the first IME. Summary disposition on the basis of causation was inappropriate, and the trial court's error was thus not harmless.

## B. COMPARATIVE FAULT AND SUDDEN EMERGENCY

Michigan assesses damages "on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault." MCL 500.3135(2)(b). Relevant as to fault, MCL 257.402(a) provides:

> In any action, in any court in this state when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. This section shall apply, in appropriate cases, to the owner of such first mentioned vehicle and to the employer of its driver or operator.

But, "[t]he statutory presumption of negligence under MCL 257.402(a) may be rebutted by showing the existence of a sudden emergency." *White*, 482 Mich at 139.

"The sudden-emergency doctrine applies when a collision is shown to have occurred as the result of a sudden emergency not of the defendants' [sic] own making." *Id.* at 139-140 (quotation marks and citations omitted). "To come within the purview of this rule the circumstances attending the accident must present a situation that is 'unusual or unsuspected.' " *Vander Laan v Miedema*, 385 Mich 226, 232; 188 NW2d 564 (1971) (citation omitted). "The term 'unusual' is employed here in the sense that the factual background of the case varies from the everyday traffic routine confronting the motorist. Such an event is typically associated with a phenomenon of nature." *Id.*

> "Unsuspected" on the other hand connotes a potential peril within the everyday movement of traffic. To come within the narrow confines of the

emergency doctrine as "unsuspected" it is essential that the potential peril had not been in clearview [sic] for any significant length of time, and was totally unexpected. [*Id.*]

The event of a motorist experiencing vehicle troubles and pulling to the side of the road, or even a motorist experiencing failure and stopping in a lane, is not necessarily an unusual occurrence on a freeway. However, it is possible, considering plaintiff's recollection of the accident, that defendant's vehicle was not in clear view for a significant period of time. Plaintiff testified at his deposition that he only had seconds between merging and seeing defendant's vehicle, and defendant's vehicle did not have its hazard lights on. While defendant contended he was in the vehicle and still slowing to a stop, with his hazard lights on, defendant did not provide any testimony, under oath, or evidence to support this allegation. And the trial court correctly noted this dispute simply created a genuine issue of material fact. Because, given the testimony in the record, it is possible a sudden emergency occurred, MCL 257.402(a) does not apply to create a presumption of negligence for plaintiff. *White*, 482 Mich at 139.

Moreover, MCL 257.402(a) may not apply, regardless of the existence of a sudden emergency, because of defendant's actions. MCL 257.402(a) provides for a presumption of negligence when a vehicle rear-ends "another vehicle proceeding in the same direction, or ***lawfully standing upon any highway within this state***[.]" MCL 257.402(a) (emphasis added). Plaintiff, in his response to defendant's motion for summary disposition, alleged that defendant, by stopping his vehicle on the freeway, violated various traffic laws. If defendant was not "lawfully standing" on the freeway, the presumption of negligence under MCL 257.402(a) is inapplicable. Whether defendant was "lawfully standing" on the freeway depends on the location of defendant's vehicle and other factual circumstances. Thus, whether defendant was lawfully standing on the freeway is, as is the case of whether plaintiff's negligence contributed to the accident, and by what percentage, a disputed genuine issue of material fact.

In sum, we find that the trial court erred by finding plaintiff failed to establish a threshold injury and granting summary disposition in defendant's favor on that basis, but find it did not err in denying summary disposition on the basis of whether plaintiff was more than 50% at fault. We decline to address defendant's unpreserved, cursory argument on appeal that the accident did not affect plaintiff's ability to lead a normal life. This unpreserved argument was not addressed by the trial court, and does not qualify as an unpreserved issue which permits appellate review. Failure to consider this issue does not change the outcome of this case, because it was never considered, and would not result in manifest injustice. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 387; 803 NW2d 698 (2010). Similarly, consideration of this issue is not necessary for a proper determination of the case, and it is not a question of law. *Id.*

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Noah P. Hood