*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANEWSHA HOLDING GROUP, LLC,

        Plaintiff,

v

COMCO, LLC, doing business as COMCO
WELLNESS,

        Defendant,

and

KIRKLAND INCOME FUND I, LLC,

        Intervenor-Appellant,

and

LIVE LIFE FEDERAL CREDIT UNION,

        Intervenor-Appellee.

UNPUBLISHED
May 16, 2025
9:27 AM

No. 370953
Jackson Circuit Court
LC No. 2023-000948-CB

---

FUSION, LLC, doing business as LEAFLINK
PAYMENTS, LLC,

        Plaintiff,

v

COMCO, LLC, doing business as COMCO
WELLNESS, JOHN DOE, and BRYSON
ENTERPRISES, LLC,

        Defendants,

and

KIRKLAND INCOME FUND I, LLC,

No. 370962
Jackson Circuit Court
LC No. 2023-000238-CB

-1-

Before:  GADOLA, C.J., and MURRAY and REDFORD, JJ.

PER CURIAM.

In these consolidated appeals,[1] intervenor-appellant Kirkland Income Fund I, LLC appeals as of right the trial court's order denying its motion for discharge and mortgage priority, and entering judgment in favor of intervenor-appellee Live Life Federal Credit Union, finding that Live Life's April 30, 2021 mortgage constituted a first priority lien against certain real property. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

These appeals involve the priority of mortgages held by Kirkland and Live Life against real property at 12584 Wooden Road (the Wooden Road Property), an issue that arose in two underlying consolidated cases in the trial court centered around the unpaid debts of defendants Comco, LLC, a cannabis company, and Bryson Enterprises, LLC, in business with Comco.[2]  In 23-000238-CB, plaintiff Fusion, LLC, doing business as LeafLink Payments, LLC, which operates an electronic payment platform for cannabis retailers and suppliers, sued Comco for the unpaid debt Comco incurred through use of the platform.  In 23-000948-CB, plaintiff Anewsha Holding Group, LLC filed suit against defendants seeking the repayment of loans for their cannabis business.

The trial court consolidated the cases and appointed a receiver over defendants' assets. Kirkland and Live Life then moved to intervene because of their interests in the Wooden Road Property, one of defendants' assets under the receiver's control.  The mortgages against that property are the subject of this appeal, as described in greater detail below.

On June 10, 2020, Live Life loaned Bryson, the owner of the Wooden Road Property, $250,000 for its business, secured by a recorded commercial mortgage against the Wooden Road Property (Live Life's 2020 Mortgage).  And on April 30, 2021, Live Life increased the principal amount of that loan to $450,000, as evidenced by a promissory note, and executed a second commercial mortgage against the property allowing for future advances (Live Life's 2021 Mortgage).

---

[1] *Anewsha Holding Group, LLC v Comco, LLC*, unpublished order of the Court of Appeals, entered May 22, 2024 (Docket Nos. 370953 and 370962).

[2] Comco and Bryson are not parties to this appeal.  We refer to Comco and Bryson collectively as defendants.

According to Kirkland,[3] in March 2020, Bryson contacted Kirkland to refinance its mortgages with Live Life. Marion Young, a representative from the title company (Res/Title) used by Kirkland e-mailed defendants' employees to inquire whether there were two mortgage liens on the Wooden Road Property, and to ask for the contact information of a Live Life representative.

Initially, Troaney Harris, the Live Life employee Young was put into contact with, mistakenly told Young there was only one mortgage lien on the property, but later acknowledged both liens and issued a payoff statement for the mortgages, stating in an e-mail to Young:

> As to the two liens of record, please see attached recorded documents. I researched again and the 2020 document is still of record and has not been discharged at Jackson County records. If I prepare a discharge of the 2020 lien, would you have it signed and notarized by the appropriate person?
>
> * * *
>
> The 2021 $450,000 lien will remain in effect until it is paid off with this closing. Then, you can discharge that lien at that time.

Young then forwarded to Harris a draft discharge of Live Life's 2020 Mortgage, which Harris signed and which was subsequently recorded. And Kirkland satisfied Bryson's outstanding indebtedness, transferring the amount of money necessary to pay off Live Life's mortgages and recording its own mortgage against the Wooden Road Property, but according to Harris, never provided Live Life with a draft discharge of Live Life's 2021 Mortgage. As a result, Live Life continued to loan money to Bryson under the 2021 Mortgage's revolving line of credit.

In an effort to establish the priority of its own recorded mortgage against the Wooden Road Property in the underlying cases regarding defendants' debt and receivership to sell and distribute defendants' assets, Kirkland filed a motion for discharge and priority pursuant to MCR 2.116(C)(10). Kirkland argued that through its refinancing, it paid off the balance of Live Life's 2021 Mortgage, which then should have been discharged pursuant to MCL 565.41 and MCL 565.44, giving Kirkland's mortgage against the property priority.

Live Life asserted in response that: (1) under MCL 565.41(1), a mortgagee is not required to discharge a future advance mortgage unless both the underlying note is paid and the borrower's right to borrow additional funds is terminated, which did not happen here; (2) equitable estoppel does not apply because failure to discharge Live Life's 2021 Mortgage was Kirkland's fault alone; (3) Kirkland's claims are barred by laches; and (4) the court should grant summary disposition to Live Life.

The court denied Kirkland's motion and entered judgment in favor of Live Life pursuant to MCR 2.116(I)(2), reasoning that under the applicable law, Live Life had no obligation to discharge its 2021 Mortgage, and that it could not identify an equitable principle that would allow

---

[3] Live Life does not dispute this fact.

-3-

it to grant relief under the circumstances. Subsequently designated a final order, the corresponding order states in part:

> Live Life Federal Credit Union's Commercial Mortgage, dated April 30, 2021 and recorded in the Jackson County Register of Deed, on July 28, 2021, Liber 2193, Page 0135, is valid, fully enforceable and constitutes a first priority lien on and against the real property commonly known as 12584 Wooden Road, Jonesville, Michigan 49250.

## II. ANALYSIS

On appeal, Kirkland argues that the doctrine of equitable subrogation should be applied to grant judgment in its favor on the issue of priority.

## A. STANDARDS OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). " 'Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.' " *Id*., quoting *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A trial court may award summary disposition to the opposing party under MCR 2.116(I)(2) if it determines that the opposing party, rather than the moving party, is entitled to judgment." *Newton v Progressive Marathon Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364569); slip op at 3 (quotation marks and citation omitted).

We also review de novo the question of mortgage priority, *Graves v American Acceptance Mtg Corp*, 469 Mich 608, 613; 677 NW2d 829 (2004), and the applicability of the equitable subrogation doctrine, *Esurance Prop & Cas Ins Co v MACP*, 507 Mich 498, 509; 968 NW2d 482 (2021).

## B. PRESERVATION AND WAIVER

Live Life does not challenge the merits[4] of Kirkland's equitable subrogation argument, but instead asserts that Kirkland waived the argument by failing to raise it in the trial court.

> In civil cases, Michigan follows the raise or waive rule of appellate review. Under that rule, litigants must preserve an issue for appellate review. To preserve an issue, the party asserting the error must demonstrate that the issue was raised in the trial court. Moreover, the moving party must show that the same basis for the error claimed on appeal was brought to the trial court's attention. If a litigant does not raise an issue in the trial court, the Court has no obligation to consider the issue.

---

[4] In its request for relief, Live Life states, "Alternatively, if the Court is inclined to entertain [Kirkland's] equitable subrogation argument notwithstanding its failure to raise it in the trial court, [Live Life] requests an opportunity to address the merits of the argument."

However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented. [*Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289-290; 14 NW3d 472 (2023) (quotation marks and citations omitted).]

Live Life is correct that Kirkland failed to preserve its equitable subrogation argument. In its motion for discharge and priority, Kirkland argued only that Live Life's 2021 Mortgage should have been discharged under MCL 565.41 and MCL 565.44, and alternatively that Live Life was equitably estopped from asserting the priority of its 2021 Mortgage. And counsel for Kirkland did not raise equitable subrogation at the motion hearing.

Kirkland's assertion that its equitable subrogation argument on appeal is "an extension and refinement of its prior request for relief in equity in the trial court" lacks merit. Equitable estoppel and equitable subrogation are distinct doctrines allowing for equitable relief under entirely different circumstances. See *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 447; 889 NW2d 759 (2016) ("Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts.") (quotation marks and citation omitted). Nevertheless, because we review application of the equitable subrogation doctrine de novo, *Esurance Prop*, 507 Mich at 509, and have the facts necessary to resolve Kirkland's equitable subrogation argument, we will address the issue.

## C. EQUITABLE SUBROGATION

"In general, Michigan is a race-notice state under MCL 565.29, wherein the owner of an interest in land can protect his or her interest by properly recording it, and the first to record an interest typically has priority over subsequent purchasers or interest holders." *In re $55,336.17 Surplus Funds*, 319 Mich App 501, 512-513; 902 NW2d 422 (2017) (quotation marks and citation omitted).[5] And under MCL 565.41:

(1) Within the applicable time period in [MCL 565.44(2)] after a mortgage has been paid or otherwise satisfied, the mortgagee or the personal representative, successor,

---

[5] MCL 565.29 provides:

Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form of or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.

or assign of the mortgagee shall prepare a discharge of the mortgage, file the discharge with the register of deeds for the county where the mortgaged property is located, and pay the fee for recording the discharge. [MCL 565.41(1).]

The trial court rejected Kirkland's arguments for discharge and priority of its mortgage against the Wooden Road Property under MCL 565.41 and MCL 565.44. Now on appeal, Kirkland argues that equitable subrogation should be applied to give its mortgage, recorded upon payoff of the promissory note balance, priority over Live Life's prior recorded 2021 Mortgage.

Equitable subrogation is a flexible, elastic doctrine of equity. Thus, [i]ts application should and must proceed on the case-by-case analysis characteristic of equity jurisprudence. Equitable subrogation is the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it. Equitable subrogation has been invoked successfully in a variety of circumstances, but the mere fact that [it] has not been previously invoked in a particular situation is not a prima facie bar to its applicability. This Court has explained that equitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other. The doctrine has two prongs: the subrogee acquires no greater rights than those possessed by the subrogor, and . . . the subrogee may not be a mere volunteer. [*Esurance Prop*, 507 Mich at 510-511 (quotation marks and citations omitted; alterations in original).]

Kirkland argues specifically that "principles of equity dictate that Kirkland should be equitably subrogated where Kirkland performed in full the obligations owed under the Promissory note to Live Life's benefit and reasonably expected that its mortgage would take priority because of the payoff," and that application of equitable subrogation is often appropriate in the context of mortgage refinance. In doing so, Kirkland asserts that the doctrine should be applied in accordance with the Restatement (Third) of Property, which it states does not adopt the "volunteer rule" mentioned above, citing a number of cases from foreign jurisdictions as well as unpublished cases it argues have adopted or followed the Restatement in applying equitable subrogation.

However, published Michigan caselaw dictates that equitable subrogation cannot be applied under the circumstances at issue in this case. In *Deutsche Bank Trust Co Americas v Spot Realty, Inc*, 269 Mich App 607, 609-612; 714 NW2d 409 (2006), this Court considered and rejected the application of equitable subrogation in the context of a mortgage refinance very similar to that at issue here, involving a future advance mortgage, holding: "[T]he doctrine of equitable subrogation was never intended for the protection of sophisticated financial institutions that can choose the terms of their credit agreements. Such lenders are 'mere volunteers' and may not benefit from this equitable remedy under Michigan law," *id*. at 614-615. In other words, where a lender is "under no legal or equitable duty" to undertake refinancing, they are a mere volunteer, and not entitled to relief under the doctrine of equitable subrogation. *Id*. at 616. An exception to the mere volunteer rule exists where "the new mortgagee was also the original mortgagee." *CitiMortgage, Inc v Mtg Electronic Registration Sys, Inc*, 295 Mich App 72, 80-81; 813 NW2d 332 (2011).

Applying that rule to this case, Kirkland is not entitled to application of equitable subrogation because it was under no legal obligation to undertake refinancing Bryson's mortgages with Live Life, and was not the original mortgagee. Kirkland attempts to distinguish the facts in this case from those at issue in *Deutsche Bank*, arguing that there, the successor mortgagee was notified of the requirement that it close the line of credit for the refinanced mortgage, but here,

> when Res/Title (on behalf of Kirkland) requested the payoff amount, Live Life: 1) did not provide any notice to Kirkland that the line of credit needed to be closed, let alone any instruction on how to properly close the line of credit, 2) erroneously told Kirkland that there was only one lien instead of two, and 3) stated "absolutely" in response to Res/Title's communicated plan for discharge of the 2021 Mortgage upon receipt of the payoff proceeds from Kirkland.

But this argument fails to overcome the mere volunteer rule, which dictates that Kirkland, as a mere volunteer in the subject mortgage refinance, is not entitled to relief through application of equitable subrogation.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ James Robert Redford